2001 UT 103

**STATE of Utah, Plaintiff and Appellee,**

v.

**Reggie Steve ROTH, Defendant and Appellant.**

**No. 991104.**

Supreme Court of Utah.

Dec. 7, 2001.

────────────

Mark L. Shurtleff, Att'y Gen., Karen Kluc-znik, Asst. Att'y Gen., Michael E. Postma, Salt Lake City, for plaintiff.

Manny Garcia, Salt Lake City, for defendant.

DURHAM, Justice:

## INTRODUCTION

¶ 1 Defendant Reggie Steve Roth (Roth) appeals from convictions for possession of equipment or supplies with intent to engage in a clandestine laboratory operation, in violation of Utah Code Ann. §§ 58–37d–4(1) and 58–37d–5(1) (1998), possession of a controlled substance, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1998), and escape, in violation of Utah Code Ann. § 76–8–309 (1999). Roth raises two claims of error: (1) the possession of methamphetamine conviction should merge with the clandestine laboratory conviction because the methamphetamine that was the basis for the possession of a controlled substance conviction might also have formed the basis for the clandestine laboratory conviction; and (2) the evidence is insufficient to sustain the escape conviction. We affirm.

## BACKGROUND

¶ 2 Having obtained a warrant for Roth's arrest, Sergeant Craig (Craig) and Deputy Barrett (Barrett) of the Salt Lake County Sheriff's Office went to Gil's Automotive, a garage, on April 24, 1998. They sought and obtained the owner's permission to search the garage and loft. At the top of the loft ladder, Craig found Roth barefoot and wearing only his pants. Roth was asked to come down, and was then arrested, handcuffed, and searched.

¶ 3 At Roth's request to retrieve his shoes for him, and also to ascertain whether or not anyone else was still in the loft area, Craig again went up to the loft. Roth appeared to grow uneasy about Craig's presence in the loft, and said he no longer needed the shoes. At approximately the same time, Craig moved some hanging clothes in the loft and noticed smoke coming from a jacket. He then saw a cook stove on the floor, and a glass beaker with a bubbling substance in it nearby. Craig recognized the paraphernalia around him as a methamphetamine lab, which was approximately two feet from where Roth had been found. Appropriate personnel were called to deal with the hazard presented by the lab, and the building was evacuated. Barrett led the handcuffed Roth to his police car, seated him in the front passenger side, placed a seat belt around him and closed the door. After Barrett read Roth his *Miranda* rights, Roth conveyed his belief that the search and any confession of his would not be admissible in court, and he proceeded to describe the process of manufacturing methamphetamine in which he had been engaged before the police arrived. The interview continued for a couple of hours. At Roth's request, he was allowed out of the police car to stretch, but was then returned to the passenger seat, secured, and the door locked.

¶ 4 At one point, Deputy Bolen (Bolen) replaced Barrett in guarding Roth, and when Bolen was distracted, Roth "slipped off the seat belt, popped the lock, . . . got out of the car and . . . bolted." Roth fled for approximately a block and-a-half before turning around and walking toward the police officers who were chasing him. Roth admitted that he had wanted to "get away" from the police. He was then taken back into custody.

## ANALYSIS

### I. LESSER–INCLUDED OFFENSE

 ¶ 5 Roth claims that his conviction for methamphetamine possession is reversible error because it cannot be determined from the jury's verdict whether the methamphetamine possession is, factually, a lesser-included offense of the conviction for the clandestine laboratory offense. Roth did not preserve this issue in the trial court. His challenge is based alternatively on the plain error doctrine or on ineffective assistance of counsel. Establishing plain error requires a showing that: "(i) an error was made; (ii) the error should have been obvious to the trial court; and (iii) the error was harmful,

so that in the absence of the error, a more favorable outcome was reasonably likely." *State v. Helmick,* 2000 UT 70, ¶ 9, 9 P.3d 164. Establishing ineffective assistance of counsel requires Roth to meet "the heavy burden of showing that (1) trial counsel rendered deficient performance which fell below an objective standard of reasonable professional judgment, and (2) counsel's deficient performance prejudiced him." *State v. Chacon,* 962 P.2d 48, 50 (Utah 1998) (citations omitted).

■ ¶ 6 In order to assess whether plain error exists, we examine the merits of Roth's claim. The statutory definition of a lesser-included offense in Utah is as follows:

(3) A defendant may· be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged....

Utah Code Ann. § 76–1–402(3)(a)(1999). Ascertaining whether an offense is a lesser-included offense requires a comparison of "the statutory elements of the two crimes as a theoretical matter and, where necessary, by reference to the facts proved at trial." *State v. Hill,* 674 P.2d 96, 97 (Utah 1983).

■ ¶ 7 In this case, Roth was charged both with operating a clandestine laboratory and with possession of methamphetamine. The jury instruction for the clandestine laboratory count stated that the jury must find each element of the following beyond a reasonable doubt in order to convict:

2. [Defendant] [k]nowingly and intentionally:

a) possessed laboratory equipment or supplies with the intent to engage in a clandestine laboratory operation;

OR

b) produced or manufactured, or possessed with intent to produce a controlled substance, to wit: methamphetamine.

This instruction closely follows the statutory language making it a second degree felony for a person "to knowingly or intentionally: ... (b) possess laboratory equipment or supplies with the intent to engage in a clandestine laboratory operation; ... [or] (f) produce or manufacture, or possess with intent to produce or manufacture a controlled or counterfeit substance...." Utah Code Ann. § 58–37d–4 (1998). The Utah Code also makes it illegal "for any person knowingly and intentionally to possess or use a controlled substance...." *Id.* § 58–37–8(2)(a)(i) (1998). Because the jurors were not given a special verdict form asking them to identify the factual basis for the clandestine laboratory conviction, Roth contends "that the methamphetamine contained in the lab *may* have been the basis of both the methamphetamine possession and clandestine lab convictions." (Emphasis added).

¶ 8 The jury, however, was given a special verdict form to determine whether a conviction for a clandestine laboratory merited enhancement. The second degree felony of operating a clandestine laboratory is "enhanced" to a first degree felony if the jury finds that "(d) [the] intended laboratory operation was to take place or did take place within 500 feet of a ... place of business ...; (e) [the] clandestine laboratory operation actually producèd any amount of a specified controlled substance; or (f) [the] intended clandestine laboratory operation was for the production of ... methamphetamine base." *Id.* § 58–37d–5(d) (f) (2001).[1] The special verdict form given to the jurors asked the following three questions: "Do you find beyond a reasonable doubt that the clandestine laboratory operation took place within 500 feet of a ... place of business ... ?; ... that the clandestine laboratory operation actually produced any amount of methamphetamine?; [or] ... that the clandestine laboratory operation was for the production of methamphetamine base?" These questions were all answered in the affirmative by the jury. Each of these findings supports the conclusion that Roth actually possessed supplies and equipment and was operating a clandestine laboratory, but not, as Roth conjectures, the inference that he was only convicted of operating a clandestine laboratory because he "pro-

---

1. For ease of reference, we cite the current version of the statute and note that there have been no alterations since defendant's conviction that would affect this appeal.

duce[d] or manufacture[d], or possess[ed] with intent to produce or manufacture a controlled or counterfeit substance."

¶ 9 Additionally, the jury instructions defining "clandestine laboratory operation" all include actual involvement with supplies and equipment used in setting up and/or operating a clandestine laboratory or in the actual manufacture of methamphetamine.[2] Thus, there can be no doubt as to the jury's finding, i.e., that Roth "[k]nowingly and intentionally possessed laboratory equipment or supplies with the intent to engage in a clandestine laboratory operation. . . ."

¶ 10 Roth argues that our decision in *State v. Hopkins*, 1999 UT 98, 989 P.2d 1065, requires a reversal of the methamphetamine possession conviction as a lesser-included offense of operating a clandestine laboratory. This case, however, is quite different from *Hopkins*. The defendant in *Hopkins* was charged with four drug offenses, including operating a clandestine methamphetamine laboratory and possession of a controlled substance precursor. *Hopkins*, 1999 UT 98 at ¶ 11, 989 P.2d at 1066–67. The jury charge on the clandestine laboratory offense included several possible ways for the offense to have been committed, including possession of " 'a controlled substance precursor with the intent to engage in a clandestine laboratory operation.' " *Id.* at ¶ 27, 989 P.2d 1065 (quoting Utah Code Ann. § 58–37d–4(1)(a) (1998)). In *Hopkins*, unlike the instant case, the jury was not asked or given any opportunity to identify the statutory alternative upon which it based the clandestine laboratory conviction. *Id.* As a result, the State conceded, and this court held, that defendant's possession of a controlled substance precursor conviction did indeed merge with his conviction for operation of a clandestine labo-

ratory. *Id.* While a special verdict form identifying the specific basis of the clandestine laboratory conviction in this case might have been the easiest way to ascertain the variation of the statute that Roth violated, it is nevertheless possible to ascertain a violation of section 58–37d–4(b), apart from Roth's possession of methamphetamine, by reviewing the answers on the special verdict form, the jury instructions, and the evidence presented at trial.

¶ 11 We therefore conclude that Roth's possession conviction does not merge with his clandestine laboratory conviction, and the trial court did not err in so holding. Additionally, of course, there has been no showing that Roth's counsel performed deficiently by failing to argue that methamphetamine possession is a lesser-included offense of operating a clandestine laboratory.

## II. ESCAPE

■ ¶ 12 Roth raises a claim of insufficiency of the evidence regarding his escape conviction. He asserts that he remained in handcuffs and was unsuccessful in "leaving his arrest," but instead "withdrew from the offense prior to its commission." "In considering an insufficiency of the evidence claim, this court reviews the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury." *State v. Widdison*, 2001 UT 60, ¶ 74, 28 P.3d 1278 (citations omitted).

¶ 13 Section 76–8–309(1) of the Utah Code states that "[a] prisoner is guilty of escape if he leaves official custody without authorization." Utah Code Ann. § 76–8–309(1) (1999). A "prisoner" is defined as "any person who is in official custody." *Id.* § 76–8–309(7)(c).

---

2. The trial court's instructions were as follows:

You are instructed that Methamphetamine is, and was at the time of the alleged offense, a controlled substance.

'Clandestine laboratory operation' means the:

(1) Purchase or procurement of chemicals, supplies, equipment, or laboratory location for the illegal manufacture of methamphetamine, or,

(2) Transportation or arranging for the transportation of chemicals, supplies or equipment for the illegal manufacture of methamphetamine, or,

(3) Setting up of equipment or supplies in preparation for the illegal manufacture of methamphetamine, or,

(4) Illegal manufacture of methamphetamine, or,

(5) Distribution or disposal of chemicals, equipment, supplies, or products used in or produced by the illegal manufacture of methamphetamine.

'Illegal manufacture' means the:

(1) Compounding, synthesis, concentration, purification, separation, extraction, or other physical or chemical processing for the purpose of producing methamphetamine, or,

(2) conversion [sic] of methamphetamine to its base form.

"Official custody" is a state of being under "arrest, whether with or without a warrant." *Id.* § 76–8–309(7)(b).

■ ¶ 14 Roth testified that he knew he was under arrest and was not authorized to leave the police car. Thus, he completed both elements of the crime of escape, as defined by the statute: leaving official custody without authorization. *Id.* § 76–8–309(1); *see also State v. Silva,* 2000 UT App. 292, ¶ 24, 13 P.3d 604. His attempt to claim "withdrawal" from the escape because he stopped running "[j]ust as Bolen was about to lay hands on him" and "returned to the police car as other officers who had heard Bolen's dispatches came to assist" falls far short of a showing of insufficiency of the evidence. This court has made it clear that a crime can be completed, even if the defendant is not successful in achieving his or her objectives. *See State v. Eagle,* 611 P.2d 1211, 1213 (Utah 1980) (stating that theft is complete "when one obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof."); *see also State v. Facer,* 552 P.2d 110, 111 (Utah 1976) ("A scheme to defraud does not need to come to fruition in order to complete the crime. [L]ike ... [b]urglary ... [t]he crime is complete when the entry is made with the intent. Whether anything is stolen or not has nothing to do with the crime."); *State v. Gates,* 118 Utah 182, 186, 221 P.2d 878, 880 (1950) ("Under our [pandering] statute the crime is complete when a person 'encourages a female to become a prostitute.' Success is not a necessary component of the crime.")

¶ 15 For similar reasons, Roth's argument regarding section 76–2–307 of the Utah Code fails. The statute states:

It is an affirmative defense to a prosecution in which an actor's criminal responsibility arises from his own conduct ... that prior to the commission of the offense, the actor voluntarily terminated his effort to promote or facilitate its commission and either:

(1) gave timely warning to the proper law enforcement authorities ...; or

(2) wholly deprives his prior efforts of effectiveness in the commission.

Utah Code Ann. § 76–2–307 (1999). There was nothing in the evidence presented at trial that tended to show Roth "voluntarily terminated" his escape. As already noted, he only walked back to the police when they caught up with him, after approximately two-and-a-half blocks. As the court in *Eagle* stated, in regard to a defendant who dropped the clothing he was attempting to steal, his act "was not a 'voluntary' act within the meaning of the statute, coming as it did in an effort to avoid arrest after having been caught red-handed.... [T]he crime of theft had already been completed, hence there could be no effective withdrawal or termination." *Eagle,* 611 P.2d at 1213. Roth's situation is precisely the same.

## CONCLUSION

¶ 16 Roth's claims of plain error and ineffective assistance of counsel fail. His convictions for possession of methamphetamine and operating a clandestine laboratory do not merge because the jury found all the elements required to support the clandestine laboratory conviction, independent of the possession of methamphetamine conviction. His claim of insufficiency of the evidence as it relates to his escape conviction fails as well. The convictions and sentences are affirmed.

¶ 17 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURRANT, and Justice WILKINS concur in Justice DURHAM'S opinion.