2007 UT App 166

**STATE of Utah, Plaintiff and Appellee,**

v.

**Terry Arnold MESSER Jr., Defendant and Appellant.**

No. 20050309–CA.

Court of Appeals of Utah.

May 24, 2007.

Randall C. Allen, Cedar City, for Appellant.

Mark L. Shurtleff, Attorney General, Marian Decker, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, ORME, and THORNE.

## OPINION

ORME, Judge:

¶ 1 Defendant Terry Arnold Messer Jr. appeals his conviction of unlawful possession of clandestine laboratory equipment or supplies, enhanced to a first degree felony. *See* Utah Code Ann. § 58–37d–4 (1998); *id.* § 58–37d–5 (Supp.1999). Defendant argues that the trial court erred by denying his motion to suppress evidence seized from among his personal belongings that were in police custody, and by refusing to give a requested jury instruction on a lesser-included offense. Defendant also argues that his trial counsel rendered ineffective assistance by failing to file a motion to suppress evidence obtained via third-party consent.[1] We affirm.

---

1. Defendant raised several other issues, and they were fully considered by this court. Because

## BACKGROUND

¶ 2 On January 14, 1999, Defendant and his girlfriend, Karen Hardy, bought several gallons of iodine tincture from a farming supply store in Cedar City. Because the purchase of such a large quantity of iodine tincture was extremely suspicious—especially at that time of year—and because the store attendant who made the sale knew that iodine tincture could be used in making methamphetamine, the attendant reported the sale to the police. As a result, the police suspected Defendant of methamphetamine production.

¶ 3 On January 21, police officers spotted Defendant's car and began to follow him. When one of the officers noticed that Defendant was traveling with Hardy, which was a violation of Defendant's parole, the officers attempted to pull him over. After a short chase, during which Defendant pushed Hardy from his moving vehicle, the officers were ultimately able to stop him. Hardy was taken to the hospital, Defendant was arrested and taken to jail, and Defendant's car was impounded. Administrative searches were made of Defendant's personal belongings upon his arrival at the jail and of his car upon impound. These searches revealed, among other items, a Radio Shack two-way radio and several keys. After the inventory of Defendant's personal belongings was completed, Defendant requested that his belongings be released to an acquaintance, who was an inmate coincidentally being released as Defendant was being booked. This request was refused.

¶ 4 Not surprisingly in view of the circumstances of her exit from Defendant's moving vehicle, Hardy cooperated with the police. She told them about a methamphetamine lab located on the property of Tim Hasch and claimed that Defendant's fingerprints would be found on the lab equipment. Police officers visited Hasch and inquired about the location of the lab. Hasch led the officers to a car up on blocks and permitted a search of the car, which was on his property. The officers found several bags in the trunk of the car, and Hasch informed the officers that the bags belonged to Defendant and that Defendant also had a key to the car. Without any objection from Hasch, the police proceeded to search the bags and found various materials used in methamphetamine production, several of which proved to have Defendant's fingerprints on them. The police also found an empty box for a Radio Shack two-way radio.

¶ 5 After searching the car on Hasch's property, the officers realized the evidentiary value of the two-way radio previously found in Defendant's car during the impound inventory search. Accordingly, the officers seized the radio for use as evidence. Likewise, they seized one of the keys previously found among Defendant's personal belongings, which proved to be a key to the car on Hasch's property.

¶ 6 Defendant was charged with unlawful possession of laboratory equipment or supplies. *See* Utah Code Ann. § 58–37d–4 (1998); *id.* § 58–37d–5 (Supp.1999). Defendant filed a motion to suppress the car key and radio as fruits of an illegal seizure, alleging that the police were not permitted to search or seize items found during previous administrative searches. The trial court held a hearing on Defendant's motion to suppress and subsequently denied the motion. The court, quoting *United States v. Grill,* 484 F.2d 990 (5th Cir.1973), *cert. denied,* 416 U.S. 989, 94 S.Ct. 2396 (1974), reasoned that because "the items in question have been exposed to police view under unobjectionable circumstances, ... no reasonable expectation of privacy is breached by an officer's taking a second look at matter with respect to which expectation of privacy already has been at least partially dissipated." *Id.* at 991, 94 S.Ct. 2396.

¶ 7 The case then proceeded to trial. Toward the conclusion of trial, Defendant requested that the jury be given a lesser-included offense instruction regarding the offense of possession of a controlled substance precursor. *See* Utah Code Ann. § 58–37c–3(12)(k) (Supp.1999). The trial court refused to give such an instruction, explaining that

each of these issues was either inadequately briefed or wholly without merit, we decline to address them. *See State v. Carter,* 776 P.2d 886, 889 (Utah 1989).

there was insufficient evidence to support a conviction on this lesser offense.

¶ 8 The jury found Defendant guilty of unlawful possession of laboratory equipment or supplies, along with all three charged enhancements. Defendant was thereafter sentenced to five years to life in the Utah State Prison. No appeal was then filed, and he began serving his sentence. Following a post-conviction relief motion based on the ineffective assistance of his prior counsel in pursuing an appeal, Defendant was resentenced in March of 2005 to allow for his appeal time to run anew. Defendant then appealed, claiming error on both the part of the trial court and his trial counsel.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 9 Defendant contests the trial court's denial of his motion to suppress and its refusal to give a requested jury instruction. Although "[w]e review the factual findings underlying the trial court's denial of [a] defendant's motion to suppress under a clearly erroneous standard[,] . . . we review 'the trial court's conclusions of law based on such facts under a correctness standard, according no deference to the trial court's legal conclusions.'" *Salt Lake City v. Davidson*, 2000 UT App 12, ¶ 8, 994 P.2d 1283 (quoting *State v. Anderson*, 910 P.2d 1229, 1232 (Utah 1996)). Likewise, "[w]e review a trial court's refusal to give a jury instruction for correctness." *State v. Parra*, 972 P.2d 924, 927 (Utah Ct.App.1998).

¶ 10 Defendant also argues, for the first time on appeal, that he was denied effective assistance of counsel when his trial counsel failed to move to suppress the evidence seized from the trunk of the car on Hasch's property. We also evaluate this claim as a matter of law. *See State v. Chacon*, 962 P.2d 48, 50 (Utah 1998).

## ANALYSIS

### I. Warrantless Seizure Subsequent to Administrative Search

■ ¶ 11 Although Utah appellate courts have not previously addressed the issue of whether the police can later search or seize items in police custody that were previously subject to an administrative search, the case of *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), provides ample guidance. In that case, Edwards was arrested and jailed after he attempted a break-in. *See id.* at 801, 94 S.Ct. 1234. After the arrest, investigation at the scene led officers to believe that Edwards's clothing might contain paint chips matching those on the window sill through which the break-in had been attempted. *See id.* at 801–02, 94 S.Ct. 1234. The following morning, the police seized and inspected Edwards's clothing and, as expected, found incriminating paint chips. *See id.* at 802, 94 S.Ct. 1234. The United States Supreme Court upheld such action and remarked:

> This was no more than taking from Edwards the effects in his immediate possession that constituted evidence of crime. This was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that Edwards was no more imposed upon than he could have been at the time and place of the arrest or immediately upon arrival at the place of detention. The police did no more [the following morning] than they were entitled to do incident to the usual custodial arrest and incarceration.

*Id.* at 805, 94 S.Ct. 1234. The Court explained that

> once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other.

*Id.* at 807, 94 S.Ct. 1234.

¶ 12 The facts of the instant case are quite similar to those in *Edwards*. Upon arrival at the jail, the search of Defendant's personal belongings revealed the key to the car on Hasch's property, and upon impound, the inventory search of Defendant's car revealed

the two-way radio.[2] From this point forward, the police were aware of these items, although the items' evidentiary value was admittedly not yet known. Later that evening, as a result of information gathered from Hardy, officers visited Hasch in continuation of their investigation. After gaining additional information from Hasch and after the search of the car on his property, the police had probable cause to seize the key and radio that were being held in police custody. Thus, here, as in *Edwards,* there was no question as to probable cause, but only a question as to whether the police were required to go through the additional step of obtaining a warrant before seizing—from themselves, really—the items as evidence. We therefore reiterate the Supreme Court's determination that "[w]hen it became apparent that the [defendant's belongings] were evidence of the crime for which [he] was being held, the police were entitled to take, examine, and preserve them for use as evidence, just as they are normally permitted to seize evidence of crime when it is lawfully encountered." *Id.* at 806, 94 S.Ct. 1234.

¶ 13 Defendant cites *United States v. Khoury,* 901 F.2d 948 (11th Cir.1990), in support of his argument that a "second look" search of an inmate's property is not allowed.[3] But *Khoury* addresses a slightly different situation because the challenged activity there was not simply the seizure of items which the police had previously discovered and retained, but instead a true re-search of the defendant's possessions. *See id.* at 957. There, the police initially conducted a cursory review of a diary while performing an inventory search, and, later, they performed a second, more thorough review of the diary and discovered that it had evidentiary value. *See id.* at 959. The *Khoury* court determined that such a search was not allowed.[4] *See id.* We need not, however, reach the issue of whether a true re-search is allowed—i.e., whether the police may again search items found in a previous administrative search in an attempt to find overlooked items or to discern whether an item may have evidentiary value—because the situation in the instant case is directly addressed and controlled by *Edwards. See State v. Thurman,* 846 P.2d 1256, 1262 (Utah 1993) (recognizing that " 'judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them' ") (quoting *Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 99 L.Ed.2d 534 (1988)).

■ ¶ 14 Like the *Edwards* court, we do "not conclude that the warrant clause of the Fourth Amendment is never applicable to postarrest seizures of the effects of an arrestee." 415 U.S. at 808, 94 S.Ct. 1234. But, relying on *Edwards,* we hold

> that *at least* when (i) an object lawfully came into plain view at the time of a search upon the arrestee's arrival at the place of detention, (ii) later investigation establishes that this item is of evidentiary value, and (iii) the item remains in police custody as a part of the arrestee's invento-

---

**2.** Defendant argues that he had a right to release his personal property to anyone, suggesting that refusal of his request to release his personal belongings to a third party leads to the conclusion that the key was not rightly in police possession. The only support given for this assertion is a citation to *State v. Hygh,* 711 P.2d 264, 268–69 (Utah 1985), without any meaningful analysis. That case, however, deals with a police officer's failure to properly follow a departmental impound procedure that allowed an arrestee the opportunity to dispose of his vehicle and avoid impound, which is a substantially different issue than that addressed here. We therefore have no reason to believe that the jail's release of an arrestee's personal belongings to third parties is anything other than completely discretionary, and we do not further consider this argument.

**3.** Defendant cites to several other cases in support of this contention. As the State points out, however, these cases do not address a return to previously searched property already in police custody, but instead set forth analysis regarding initial police searches of one form or another.

**4.** Although there are compelling arguments on both sides of this issue, the conclusion reached in *Khoury* is a minority view. A majority of courts have instead determined that if a defendant's personal property is already in lawful police custody, "the police could conduct a search upon the mere hunch that something of evidentiary value with respect to the charged offense or, indeed, any other offense might be found." 3 Wayne R. LaFave, *Search and Seizure* § 5.3(b), at 162 (4th ed.2004).

ried property, then it is permissible for the police, without a warrant, to retrieve that object and thereafter deal with it as an item of evidence.

3 Wayne R. LaFave, *Search and Seizure* § 5.3(b), at 159 (4th ed.2004) (emphasis in original) (footnote omitted). *See Edwards,* 415 U.S. at 805, 807, 94 S.Ct. 1234. *See also* LaFave at 159 n. 74 (listing numerous cases holding such warrantless searches lawful). Accordingly, we conclude that the car key and radio at issue here were properly seized for use as evidence.

## II. Jury Instruction on Lesser-Included Offense

■ ¶ 15 Defendant argues that the trial court erred by refusing to instruct the jury regarding possession of a controlled substance precursor, which he contends is a lesser-included offense of unlawful possession of laboratory equipment or supplies. In deciding whether to grant a defendant's request for a jury instruction regarding a lesser-included offense, the trial court must consider two questions. "First, the court must compare the statutory elements of the crimes and determine whether the elements overlap. Second, it must determine whether a rational basis exists on which the jury could acquit the defendant of the offense charged while convicting him of the alternative offense." *State v. Parra,* 972 P.2d 924, 927 (Utah Ct.App.1998) (citation omitted).

■ ¶ 16 The offense of possession of a controlled substance precursor is set forth in section 58–37c–3(12)(k) and is satisfied when the defendant knowingly and intentionally "obtain[s] or attempt[s] to obtain or to possess any controlled substance precursor or any combination of controlled substance precursors knowing or having a reasonable cause to believe that the controlled substance precursor is intended to be used in the unlawful manufacture of any controlled substance." Utah Code Ann. § 58–37c–3(12)(k) (Supp.1999).[5] The offense of unlawful possession of laboratory equipment and supplies is set forth in section 58–37d–4(1), and makes

it illegal for a defendant to knowingly or intentionally "possess a controlled substance precursor with the intent to engage in a clandestine laboratory operation." *Id.* § 58–37d–4(1)(a) (1998). Thus, the statutes overlap, and the former offense can be a lesser-included offense of the latter—the latter offense requiring that in addition to knowingly obtaining the controlled substance precursor, the defendant must also personally plan to engage in drug production. *See State v. Hopkins,* 1999 UT 98, ¶ 27, 989 P.2d 1065 (noting that section 58–37d–4(1)(a) "includes all the elements for conviction of possession of a controlled substance precursor").

■ ¶ 17 Nonetheless, possession of a controlled substance precursor is not always a lesser-included offense of unlawful possession of laboratory equipment and supplies. The latter offense may also occur with other prohibited activities, such as "possess[ing] laboratory equipment or supplies with the intent to engage in a clandestine laboratory operation," Utah Code Ann. § 58–37d–4(1)(b), or "conspir[ing] with or aid[ing] another to engage in a clandestine laboratory operation," *id.* § 58–37d–4(1)(e). Thus, if a jury convicts a defendant based on one of the alternative prohibited activities, and not for "possess[ion of] a controlled substance precursor with the intent to engage in a clandestine laboratory operation," *id.* § 58–37d–4(1)(a), then possession of a controlled substance precursor would not constitute a lesser-included offense.

¶ 18 In this case, the State argues that the jury found Defendant guilty under the "equipment or supplies" variant of the offense, *id.* § 58–37d–4(1)(b), and thus, possession of a controlled substance precursor is not a lesser-included offense. This, however, is not clear from the record. The special verdict form states that the jury found Defendant guilty "of unlawful Possession of Laboratory Equipment or Supplies, as charged in the information." And both the Information and the jury instructions speak to two possible alternatives for committing the offense, namely "(a) possess[ing] a con-

---

5. As further addressed in footnote 7, the applicable statutes have changed in the eight years since Defendant was convicted. Because the statutes

in effect at the time of his arrest and conviction control his appeal, we cite to the statutory codification then in effect.

trolled substance precursor with the intent to engage in a clandestine laboratory operation; [and] (b) possess[ing] laboratory equipment or supplies with the intent to engage in a clandestine laboratory operation." *Id.* § 58–37d–4(1)(a)–(b). Based on the special verdict form, the offense of possession of a controlled substance precursor is assumed to be a lesser-included offense because we cannot tell whether the jury returned a guilty verdict based on possession of controlled substance precursor or based on possession of laboratory equipment or supplies. *See Hopkins,* 1999 UT 98 at ¶ 27, 989 P.2d 1065 (determining that possession of controlled substance precursor was lesser-included offense of possession of laboratory equipment or supplies in a case where there was no special verdict form and it was therefore possible that jury found the defendant guilty of the latter offense relying on the "controlled substance precursor" prong).[6] Although in some cases the jury instructions can help overcome such an uncertainty, *see State v. Roth,* 2001 UT 103, ¶¶ 9–10, 37 P.3d 1099, here they are unhelpful in this regard. Therefore, we conclude that the statutory elements of the two offenses do, in fact, overlap in this case.

¶ 19 Defendant must next show that there was a rational basis for the jury to convict him of possession of a controlled substance precursor, and to simultaneously acquit him of unlawful possession of laboratory equipment and supplies. *See Parra,* 972 P.2d at 927. Defendant has failed to meet this burden. His theory at trial was that although he was involved with the purchase of the iodine tincture, he never intended to be personally involved in the production of methamphetamine, rationalizing his connection to the laboratory equipment as merely an unfortunate case of being in the wrong place at the wrong time. Had the jury believed this, an acquittal was possible. But Defendant's assertion that he could have, at the same time, been convicted of a lesser-included offense is unsupported by the record because procurement of the iodine tincture could not support a conviction on the lesser-included offense. The applicable statute did not list iodine tincture as a controlled substance precursor. *See* Utah Code Ann. § 58–37c–3(2) (Supp.1999). Likewise, the jury was only instructed that "ephedrine, pseudoephedrine, and crystal iodine are controlled substance precursors." [7] Instead, the sole part of the record to which Defendant cites to support his possible conviction on a lesser-included offense—that he possessed one of the listed precursors—is his own trial testimony that Hardy gave him a big bag of iodine crystals which *were* listed as a controlled substance precursor.[8] During ques-

---

6. Defendant argues that the jury *must* have believed he possessed a controlled substance precursor because the special verdict form shows that the jury found him guilty of the enhancement of actually operating a laboratory, which operation, he argues, would necessarily require possession of a controlled substance precursor. Such an argument is unavailing. The jury was instructed that laboratory operation could include purchase, procurement, transportation, distribution, or disposal of "chemicals, supplies, or equipment" to be used in controlled substance production. Thus, the definition is satisfied by any one of those items, and it is entirely possible that the jury made the determination that Defendant operated a laboratory based only on evidence of equipment or other supplies used in methamphetamine production.

7. Defendant additionally asserts that we may consider iodine tincture to be a controlled substance precursor, notwithstanding the fact that at the time of his arrest and conviction it was not among the chemicals statutorily defined as controlled substance precursors. More specifically, Defendant argues that the list of controlled substance precursors is not exhaustive and that be-

cause iodine tincture was added to the list in 2000, *see* Utah Code Ann. § 58–37c–3(2)(jj) amendment notes (2002), it is rational to include it as such in this case. The usual rule is that the version of the statute in effect at the time of arrest and conviction controls, *see State v. Guzman,* 2004 UT App 211, ¶ 10 n. 4, 95 P.3d 302 (applying earlier version of statute, because "when the crimes were committed, [that] version of the statute [was] in effect"), and Defendant cites no authority in support of his opposite contention. We therefore do not address that contention as it is insufficiently briefed. *See* Utah R.App. P. 24(a)(9); *State v. Thomas,* 961 P.2d 299, 305 (Utah 1998) ("We have previously stated that this court is not a depository in which the appealing party may dump the burden of argument and research.") (citations and internal quotation marks omitted).

8. The trial court reasoned that there was insufficient evidence to give the lesser-included offense instruction because there was no trial testimony as to the weight of the crystals. This issue is irrelevant because the lesser-included offense may be met by "any amount of controlled sub-

tioning, he responded that he didn't "want nothing to do with this" and returned the bag. This cited testimony would not support the intent element of the lesser offense—that he knowingly and intentionally "obtain[ed] or attempt[ed] to obtain or possess" the crystals. *Id.* § 58–37c–3(12)(k). Thus, the trial court did not err in refusing to give the lesser-included offense instruction.

### III.  Third–Party Consent to Search

¶ 20 Defendant contests the search performed with Hasch's consent, during which the police found the bag containing meth lab components. Defendant argues that Hasch's consent to the search of the car was insufficient to allow the search of Defendant's bags stored in the car trunk. Defendant further contends that because the items within the bags should have been excluded, his trial counsel rendered ineffective assistance by not moving to suppress the evidence.

¶ 21 "If a third party rather than the defendant consents to a search, the third party must be one who possesses 'common authority' over the area or has some other 'sufficient relationship to the premises or effects sought to be inspected.'" *State v. Brown,* 853 P.2d 851, 855 (Utah 1992) (quoting 3 Wayne R. LaFave, *Search and Seizure* § 8.5(c) (2d ed.1987)). As custodian of the car and owner of the property on which the car sat on blocks, Hasch had at least common authority over the area searched. Moreover, a search is valid even in instances where the third party does not possess common authority, as long as the police "reasonably believe[ ]" that the third party possesses such authority. *Illinois v. Rodriguez,* 497 U.S. 177, 189, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Such a belief was clearly reasonable given the facts in this case.

¶ 22 Defendant additionally argues that the police believed Hasch's assertion that the bags in the trunk belonged to Defendant, and, therefore, that "[t]here is no indication of joint-ownership or control" under these facts. This argument is misplaced for two reasons. First, common authority does not require ownership. *See Brown,* 853 P.2d at 855 (" '[I]t is the right of possession rather than the right of ownership which ordinarily determines who may consent to a police search of a particular place.' ") (quoting 3 Wayne R. LaFave, *Search and Seizure* § 8.5(b) (2d ed.1987)) (alteration in original). Second, in leaving the bags in Hasch's car on Hasch's property, Defendant took the risk that Hasch might not maintain Defendant's privacy interest in the bags. *See United States v. Austin,* 66 F.3d 1115, 1119 (10th Cir.1995) ("By leaving his bag in the possession and control of [a third party], defendant assumed the risk that [the third party] would allow the authorities access to the bag."), *cert. denied,* 516 U.S. 1084, 116 S.Ct. 799, 133 L.Ed.2d 747 (1996).

¶ 23 Because the officers could have, at the very least, reasonably believed that Hasch had authority to consent to a search of the car trunk and its contents, a motion to suppress the evidence found as a result of the search would have been futile. Defendant therefore cannot show deficient performance, and his ineffective assistance of counsel claim fails. *See State v. Malmrose,* 649 P.2d 56, 59 (Utah 1982) ("Effective representation does not require counsel to object when doing so would be futile.").

### CONCLUSION

¶ 24 First, the trial court did not err in denying Defendant's motion to suppress the evidence seized from his personal belongings that was previously discovered through an administrative search, was later found to have evidentiary value, and was still in police custody. Second, it was not error for the trial court to refuse to instruct the jury regarding a lesser-included offense. Defendant has not met his burden of proving that there was evidence to support a conviction on the lesser-included offense and a simultaneous acquittal on the greater offense. Finally, the search of the bags in the car was not illegal, and Defendant's trial counsel was

---

stance precursor." Utah Code Ann. § 58–37c–3(11) (Supp.1999). Although the trial court's reasoning was erroneous, the jury was properly

instructed that "any amount of ... controlled substance precursor is sufficient."

therefore not ineffective in failing to move to suppress the evidence obtained through this search.

¶ 25 Affirmed.

¶ 26 WE CONCUR: JUDITH M. BILLINGS and WILLIAM A. THORNE JR., Judges.