2007 UT App 286

**In the Interest of A.B., a person under eighteen years of age.**

**M.B., Petitioner and Appellant,**

v.

**J.B., Respondent and Appellee.**

No. 20060725–CA.

Court of Appeals of Utah.

Aug. 30, 2007.

Wendy J. Lems and Rebecca G.W. Random, Midvale, for Appellant.

Kendall S. Peterson and Timothy J. Curtis, Salt Lake City, for Appellee.

Penny Heal Breiman, Salt Lake City, Guardian Ad Litem.

Before GREENWOOD, Associate P.J., BILLINGS and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 This appeal concerns the juvenile court's order denying a mother's petition to terminate the parental rights of her ex-husband. We affirm. In the process, we are constrained to hold under recent precedent that her challenge to the legal sufficiency of the findings was not preserved for appeal.

## BACKGROUND [1]

¶ 2 M.B. (Mother) and J.B. (Father) were married in Utah in 1998. Almost two years

---

1. "[W]e recite the evidence in a light consistent with the trial court's factual findings unless the

later, while residing in California, Mother and Father had a child, A.B. In August 2002, Mother and Father separated and, against Father's wishes, Mother and A.B. came to Utah to live with her parents. For the next several months after the relocation, Father contacted Mother and A.B. by phone, and in the fall of 2002, Father twice arranged for visitation with A.B. In December 2002, however, Father twice requested to see A.B., and Mother denied both requests. That same month, Mother's younger sister, A.A., had informed Mother that during the parties' marriage, Father had sexually abused her. From January through March 2003, the Division of Child and Family Services (DCFS) investigated the allegations, and its investigation "supported a finding of sexual abuse ... relative to [A.A.]." From January 2003 into April 2003, Mother stopped taking Father's telephone calls, and Father was able to contact Mother only a few times during those months. Mother also informed Father that he was not welcome at her parents' residence.[2]

¶ 3 At the time of the parties' separation, Father was finishing podiatry school and was unable to maintain employment. After his graduation in 2003, Father attempted, through counsel, to establish a child support schedule for A.B. When Mother's then-counsel failed to cooperate, Father estimated an amount and made periodic payments to Mother. In 2005, the Office of Recovery Services (ORS) filed a motion to establish regular child support payments, which resulted in an order providing for income withholding. That same year, Mother filed her termination of parental rights petition. When ORS learned of the petition, it contacted Mother and inquired whether she wanted ORS to continue to collect child support from Father. Mother indicated that she simply wanted Father to leave her alone and that she did not desire child support from Father. When ORS then ceased to withhold income for child support, Father instead made a lump sum payment to Mother.

¶ 4 Father drove to Salt Lake City in April 2003 with the specific purpose of seeing A.B. Mother and her family did not allow him to see A.B., and had him arrested for sexually abusing A.A. Mother filed for divorce.

¶ 5 After A.A. disclosed Father's sexual abuse, Mother suspected that Father had also sexually abused A.B. Accordingly, she took A.B. to her family doctor and to Primary Children's Medical Center to be examined. Although medical professionals determined that A.B.'s hymen was "floppy," the examinations were "inconclusive of any sexual abuse." Furthermore, two psychiatrists who independently evaluated Father opined that he "presented very slight or no risk of sexually abusing [A.B.]."

¶ 6 In May 2003, Father made his initial appearance in the sexual abuse case. The court issued a pretrial order mandating that, as a condition of Father's pretrial release, "he have no contact with [A.A.], or her family members and that he have no unsupervised contact with any individual under 18 years of age." In November 2004, Father entered a plea in abeyance to two counts of sexual battery of a minor, and the criminal court ordered him to serve thirty days in jail, attend counseling, receive a psychosexual evaluation, and pay a $500 fine. Additionally, the criminal court put him on probation for thirty-six months, which is set to expire in November 2007. After the prosecutor warned Father that deposing A.A. or her family in relation to the divorce case could jeopardize his plea agreement, Father abandoned his attempts to get court-ordered visitation and enlisted his parents to help him maintain a relationship with A.B. Except for one visit in September 2003 and a few phone calls, Mother did not provide Father's parents with contact information for A.B. Furthermore, Mother asked Father's parents to discontinue any contact with Mother at her parents' residence, as "her parents would not approve."

¶ 7 On May 19, 2005, after Father sent A.B. a birthday gift that was rejected, Father

findings are clearly erroneous." *Chen v. Stewart,* 2005 UT 68, n. 1, 123 P.3d 416.

2. After the separation, Mother had five separate residences. Except for when she lived with her parents, Mother did not provide Father with contact information.

filed a motion for order to show cause requesting supervised parent-time with A.B. On May 20, 2005, Mother filed her petition to terminate Father's parental rights. In the petition, Mother alleged four grounds justifying the termination of Father's parental rights: (1) abandonment, see Utah Code Ann. § 78-3a-407(1)(a) (Supp.2007); (2) only token efforts to support or communicate, see id. § 78-3a-407(1)(f); (3) parental unfitness, see id. § 78-3a-407(1)(c); and (4) neglect or abuse, see id. § 78-3a-407(1)(b).

¶ 8 After an unsuccessful attempt at mediation, the petition to terminate Father's parental rights was scheduled for trial. At the end of a fourteen-day trial, the juvenile court issued findings of fact, conclusions of law, and an order denying Mother's petition to terminate Father's parental rights. The juvenile court reasoned that although "[Father] has significant parenting, anger management, and sexual conduct issues," [3] Mother "failed to prove any statutory basis for the termination of [Father's] parental rights by clear and convincing evidence." Mother did not file any objection to the juvenile court's factual findings and timely appealed the juvenile court's order to this court.

## ISSUES AND STANDARD OF REVIEW

¶ 9 Mother raises two basic challenges on appeal.[4] First, Mother argues that the juvenile court's factual findings are internally inconsistent, insufficiently detailed, and fail to support its conclusions of law. Second, Mother argues that the juvenile court erred in concluding she failed to prove any of the statutory bases justifying termination of Father's parental rights in A.B. and that the court's related factual findings lack evidentiary support.

¶ 10 In reviewing cases where the termination of parental rights is in issue, we give the juvenile court a "wide latitude of discretion as to the judgments arrived at

based upon not only the court's opportunity to judge credibility firsthand, but also based on the juvenile court judges' special training, experience[,] and interest in this field." In re E.R., 2001 UT App 66, ¶ 11, 21 P.3d 680 (citation and internal quotation marks omitted). "Findings of fact in a parental rights termination proceeding are overturned only if they are clearly erroneous." In re E.D., 876 P.2d 397, 402 (Utah Ct.App.), cert. denied, 890 P.2d 1034 (Utah 1994). Furthermore, "[i]n reviewing a decision to grant or deny a. termination petition, [w]e will not disturb the juvenile court's findings and conclusions unless the evidence clearly preponderates against the findings as made or the court has abused its discretion." In re R.A.J., 1999 UT App 329, ¶ 6, 991 P.2d 1118 (citation and internal quotation marks omitted) (second alteration in original).

## ANALYSIS

### I. Inadequacy of Juvenile Court's Factual Findings

¶ 11 Mother argues that the juvenile court's factual findings are internally inconsistent, are insufficiently detailed, and fail to support its conclusions of law. While the findings, taken as a whole, support the legal conclusions, Mother's point is well-taken to the extent that there are, indeed, some internal inconsistencies in the juvenile court's seventy-six factual findings. But because Mother did not raise any objection regarding the legal sufficiency of the findings with the juvenile court, that issue is not preserved, and we do not address it. See 438 Main St. v. Easy Heat, Inc., 2004 UT 72, ¶¶ 50, 52, 55, 56, 99 P.3d 801 (holding that even where the plaintiff objected to the findings of fact orally and in two post-trial motions, the argument that the findings were insufficiently detailed had been waived because the objections were not specific enough to alert the trial court to this particular concern). See also In re K.H., 2004 UT App 483, ¶¶ 9, 10 & n. 5, 12, 105

---

3. In addition to Father's sexual abuse of A.A., the court found that Father forced himself on Mother sexually while A.B. was in the same house.

4. Mother's brief actually raises five separate issues, but after thorough review, it appears that the issues have significant overlap. Insofar as

Mother challenges the juvenile court's legal conclusions other than its determination that Mother did not meet her burden by clear and convincing evidence, the challenge is not well-taken. The conclusions follow from the facts found by the trial court.

P.3d 967 (stating, with two judges concurring in the result only, that court of appeals is "bound" to follow the preservation rule of *438 Main Street*, while noting the new rule "seems to be hyper technical and to impose an unduly heavy burden on counsel").[5]

## II. Insufficiency of the Evidence Supporting Juvenile Court's Factual Findings

 ¶ 12 Mother also argues that there was insufficient evidence to support the juvenile court's factual findings. Mother contends that the juvenile court committed clear error in concluding that she failed to provide clear and convincing evidence that statutory grounds existed to terminate Father's parental rights in A.B.[6]

Utah law requires a court to make two distinct findings before terminating a parent-child relationship. First, the court must find that the parent is below some minimum threshold of fitness ... based on any of the grounds for termination under section 78–3a–407. Second, the court must find that the best interests and welfare of the child are served by terminating the parents' parental rights.[7]

*In re R.A.J.*, 1999 UT App 329 at ¶ 7, 991 P.2d 1118 (citations and internal quotation marks omitted). The petitioner in a parental rights termination case "has the burden of establishing both of these elements by clear and convincing evidence." *Id. See* Utah Code Ann. § 78–3a–406(3) (Supp.2007).

¶ 13 Insofar as Mother challenges the sufficiency of the evidence supporting the juvenile court's findings of fact, she has an affirmative obligation to "marshal the evidence *in support* of the findings and then demonstrate that despite this evidence, the [juvenile] court's findings are so lacking in support as to be against the clear weight of the evi-

---

5. In *In re K.H.*, 2004 UT App 483, 105 P.3d 967, the author recognized that "the supreme court has broadened the preservation requirement, now specifically requiring, for the first time, that appellants challenging the sufficiency of a trial court's findings preserve this argument by filing detailed objections to those findings prior to any appeal." *Id.* at ¶ 9. Although the opinion noted its trepidation about the new preservation requirement, *see id.* at ¶ 10 n. 5, it expressly recognized that it was "bound by the supreme court's holding in *438 Main Street*," *id.* at ¶ 10, and then applied this holding to the case before it, *see id.* at ¶ 11. The other two judges concurred in this result. *See id.* at ¶ 12.

The expressed trepidation is understandable. The *438 Main Street* opinion's discussion addressing if the plaintiff preserved its challenge to the sufficiency of detail in the factual findings, *see 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶¶ 50–56, 99 P.3d 801, made no mention of rule 52(a) of the Utah Rules of Civil Procedure, which specifically states that "[r]equests for findings are not necessary for purposes of review." Utah R. Civ. P. 52(a). The opinion also made no mention of rule 52(b), which provides that "[w]hen findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party ... has made in the district court an objection to such findings[.]" *Id.* 52(b). These provisions at least seem inconsistent with the new preservation requirement.

Furthermore, the relevant discussion in *438 Main Street* did not include references to cases such as *Woodward v. Fazzio*, 823 P.2d 474 (Utah Ct.App.1991), where this court remanded a ter-

mination of parental rights decision for entry of more detailed factual findings even though the parties had not filed any objections to those findings with the trial court. *See id.* at 475, 479. Accordingly, while we ultimately conclude that, under *438 Main Street*, Mother failed to preserve her argument that the factual findings were internally inconsistent and lacked sufficient detail, *see* 2004 UT 72 at ¶ 56, 99 P.3d 801, we believe that *438 Main Street* merits reexamination by our Supreme Court.

6. Mother also contends that when the juvenile court denied Father's oral motion to dismiss at the close of Mother's case, the court necessarily determined that she had established her burden of proof and was entitled to judgment as a matter of law unless Father could rebut the evidence she presented. We note that in denying the oral motion to dismiss, the trial court concluded that Mother had made a prima facie case—but not necessarily a clear and convincing showing—that Father's parental rights should be terminated, and appropriately provided Father the opportunity to rebut that prima facie case. *See In re M.L.*, 965 P.2d 551, 557 (Utah Ct.App.1998) (" 'A prima facie case is proven when evidence has been introduced which, *in the absence of contrary evidence*, would entitle the party with the burden of proof to judgment as a matter of law.' ") (quoting *State v. 633 E. 640 N.*, 942 P.2d 925, 931 n. 1 (Utah 1997)) (emphasis added).

7. Because the juvenile court concluded that Mother failed to prove by clear and convincing evidence any grounds for termination of Father's parental rights, it did not proceed to the next step, the best interests of the child.

dence, thus making them clearly erroneous." *Mountain States Broad. Co. v. Neale,* 776 P.2d 643, 646 (Utah Ct.App.1989) (quoting *In re Bartell,* 776 P.2d 885, 886 (Utah 1989)) (emphasis in original) (internal quotation marks omitted). "This does not mean that [Mother] may simply provide an exhaustive review of all evidence presented at trial. Rather, [Mother] must provide a precisely focused summary of all the evidence supporting the findings [she] challenges." *Chen v. Stewart,* 2004 UT 82, ¶ 77, 100 P.3d 1177 (citations omitted). Then, she "must ferret out a fatal flaw in the evidence" and demonstrate why the evidence does not support the trial court's findings. *West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1315 (Utah Ct.App.1991).

¶ 14 While Mother did not completely disregard her duty to marshal the evidence, she apparently misunderstood it.[8] With the exception of findings 8 and 9,[9] Mother fails to even identify which findings she is actually challenging on appeal. Instead, she vaguely argues that "the trial court's finding of insufficient evidence was a clear error," and then broadly "urges this Court to find that the evidence presented by [Mother] did prove one or more statutory bases required for the termination of parental rights."

¶ 15 Additionally, "[i]nstead of marshalling only the evidence *supporting* the [juvenile court's] findings, [Mother] review[s] in minute detail all the evidence before the [juvenile court]," and "insist[s] on [primarily] emphasizing the evidence that support[s her] position." *Heinecke v. Department of Commerce,* 810 P.2d 459, 464 (Utah Ct.App.1991) (footnote omitted). She essentially lays out all the evidence she presented at trial, as well as the evidence presented by Father, and then asks this court to find that the juvenile court erred in concluding that "[she] failed to prove any statutory basis for the termination of [Father's] parental rights by clear and convincing evidence." She does not, however, specifically indicate what evidence supports the trial court's findings and does not "ferret out a fatal flaw in [Father's] evidence," *Majestic Inv. Co.,* 818 P.2d at 1315, to demonstrate why the juvenile court's findings are clearly erroneous. Accordingly, "[Mother] failed to completely satisfy [her] obligation to marshal the evidence by 'persistently arguing [her] own position without regard for the evidence supporting the [juvenile court's] findings.'" *Heinecke,* 810 P.2d at 464 (citation omitted).

¶ 16 Because Mother failed to properly marshal the evidence, and even failed to precisely identify which findings she actually challenges on appeal, "we refuse to consider the merits of [her] challenges to the findings and accept the findings as valid."[10] *Mountain States,* 776 P.2d at 646. Taking those

8. In her reply brief, Mother asks this court to "grant leave to revise her brief [to comply with the marshaling requirement], as the marshaling requirement was not complied with upon a good faith belief ... that the requirement did not apply." Mother provides no legal authority or support for her request. Accordingly, we do not address it. *See State v. Messer,* 2007 UT App 166, ¶ 1 n. 1, 164 P.3d 421.

9. Although Mother identifies findings 8 and 9 and argues that both Father's and Mother's evidence was contrary to these findings, she nonetheless failed to marshal any evidence in *support* of the findings and then to explain why they are clearly erroneous in view of that evidence. Accordingly, we "accept the findings as valid." *Mountain States Broadcasting Co. v. Neale,* 776 P.2d 643, 646 (Utah Ct.App.1989).

10. Mother also contends that the trial court abused its discretion in weighing and interpreting the evidence by heavily relying on Father's testimony in making its factual findings. Mother argues that because the juvenile court stated in finding 37 that "[Father]'s testimony is not credible and that [he] either perjured himself before this Court or before the criminal court," the juvenile court erred when it accorded weight to Father's testimony regarding his attempts to communicate with his daughter. We disagree.

First, finding 37 appears to only refer to Father's testimony regarding whether he sexually abused Mother's sister, A.A. The "lack of credibility" assessment therefore does not appear to apply to the whole of Father's testimony at trial, but only to his inconsistent testimony regarding the criminal case. Second, the juvenile court has the discretion to independently weigh Father's testimony. *See In re R.A.J.,* 1999 UT App 329, ¶ 11, 991 P.2d 1118 ("[A] juvenile court judge has considerable discretion in weighing evidence presented pursuant to a petition to terminate parental rights."). Accordingly, we conclude that the juvenile court was within its discretion to weigh Father's credibility as a witness and assign his credibility whatever weight it chose in making its findings.

findings as valid, we cannot say the juvenile court erred in concluding she failed to demonstrate by clear and convincing evidence any statutory ground for terminating Father's parental rights.

## CONCLUSION

¶ 17 Because Mother failed to raise any objection to the legal sufficiency of the findings with the juvenile court, her claim that the findings are internally inconsistent and insufficiently detailed is unpreserved, and we therefore do not reach it. Moreover, because Mother failed to properly marshal the evidence, her challenge to the sufficiency of the evidence supporting the findings is without merit, and we accept the findings as valid.

11. Without in any way suggesting what the ultimate decision should be, comments at oral argument prompt us to remind the parties that the district court has plenary authority to determine whether, and on what terms, Father will have visitation rights with A.B. The juvenile court never addressed whether visitation would be in A.B.'s "best interests," *see In re R.A.J.*, 1999 UT

The juvenile court's legal conclusions follow from those findings. Accordingly, we affirm the juvenile court's findings of fact and conclusions of law, and its order denying Mother's petition.[11]

¶ 18 I CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge.

¶ 19 I CONCUR IN THE RESULT: JUDITH M. BILLINGS, Judge.

App 329 at ¶ 7, 991 P.2d 1118, while the district court must, *see* Utah Code Ann. § 30–3–34(1) (Supp.2007). Further, the juvenile court was operating under a clear and convincing evidence standard, *see id.* § 78–3a–406(3), whereas the district court operates under a preponderance of the evidence standard, *see id.* §§ 30–3–32(2)(b), – 34(2).