2007 UT App 374

**DESERT POWER, LP, Petitioner,**

v.

**PUBLIC SERVICE COMMISSION and PacifiCorp, Respondents.**

No. 20061111–CA.

Court of Appeals of Utah.

Nov. 23, 2007.

Rehearing Denied Dec. 18, 2007.

Stephen F. Mecham, Salt Lake City, for Petitioner.

Sander J. Mooy and Dean Brockbank, Salt Lake City; and David L. Elmont, St. George, for Respondents.

Before BENCH, P.J., ORME, and THORNE, JJ.

## OPINION

BENCH, Presiding Judge:

¶ 1 Desert Power, LP (Desert Power) petitions this court for review of an order issued by the Public Service Commission (the Commission) in which the Commission determined that Desert Power could not be excused from performing its contract with PacifiCorp by virtue of an event of force majeure. Specifically, Desert Power argues that the Commission erroneously interpreted the force majeure provision of the contract and that, under a correct interpretation of that provision, it would be entitled to relief as a matter of law. We conclude that the Commission's factual finding that Desert Power was partially responsible for the delays it claims were events of force majeure precludes Desert Power from qualifying for relief even under its proposed interpretation of the contract. Because Desert Power failed to raise any objection regarding the factual findings in its requests for clarification or its application for reconsideration,

Desert Power failed to preserve any challenge to these findings for our review. Accordingly, we affirm.

## BACKGROUND

¶ 2 In 2001, Desert Power constructed a simple-cycle power plant near Rowley, Utah.[1] In 2004, Desert Power undertook an expansion of the plant that would convert it to a combined-cycle cogeneration facility.[2] As a result of this expansion, Desert Power would become a "qualifying facility" under applicable federal and state law.

¶ 3 On September 24, 2004, Desert Power entered into a long-term Power Purchase Agreement (the Purchase Agreement) to sell power from its expanded facility to PacifiCorp. Under the terms of the Purchase Agreement, the Desert Power combined-cycle power plant was to be commercially operational, subject to certain conditions, by May 9, 2006. For its part, PacifiCorp would provide the system that transmitted the power from the plant to the consumer.

¶ 4 In order to connect with the PacifiCorp transmission system, Desert Power was required to provide PacifiCorp with considerable technical information regarding the equipment it would be installing in its expanded facility. Among these pieces of new equipment was a steam turbine and generator set (STG). Desert Power began looking for a new STG in 2004 and ultimately found an STG that met its specifications in early 2005. Desert Power filed its formal request with PacifiCorp to increase its interconnection capacity in February 2005 and provided additional technical data in June 2005. With this technical data, PacifiCorp began a study to determine whether the interconnection system was capable of handling the intended amount of power. On October 20, 2005, PacifiCorp notified Desert Power that it had modified its original interconnection design to ensure the safety and integrity of the interconnection system. The new design was

based on the specific technical data that Desert Power had provided five months previously and would require equipment and parts not originally contemplated by the parties, some of which could not be obtained for several months.

¶ 5 In a letter dated February 10, 2006, Desert Power notified PacifiCorp of its intent to invoke the force majeure provision of the Purchase Agreement. Under this provision, an event of force majeure was defined as "any cause beyond the reasonable control of [Desert Power] or PacifiCorp that, despite the exercise of due diligence, such party is unable to prevent or overcome." If an event of force majeure occurred, the Purchase Agreement provided that "both parties shall be excused from whatever performance is affected by the event of Force Majeure," as long as the party invoking the force majeure provision met certain conditions, such as (1) giving notice to the other party of the event of force majeure, (2) suspending performance only to the scope and duration reasonably required by the event of force majeure, and (3) using reasonable commercial efforts to remedy the inability to perform. Also pursuant to the force majeure provision, PacifiCorp had the right to terminate the Purchase Agreement if Desert Power "fail[ed] to remedy [its] inability to perform, due to a Force Majeure event, within six (6) months after the occurrence of the event unless [Desert Power was] diligently pursuing the remedy of such event and ha[d] good-faith efforts underway to remedy such non-performance." If Desert Power was unable to make the repairs in six months "due to lead times and parts availability," then PacifiCorp would not be entitled to terminate the Purchase Agreement until "a period of eighteen (18) months from the date of the occurrence of the event" had passed.

¶ 6 Desert Power claimed that PacifiCorp's decision to redesign the interconnection, and the ensuing delays, constituted an event of force majeure that permitted Desert Power

---

1. In a simple-cycle facility, power is generated by a turbine with natural gas. The waste heat from combustion is exhausted into the atmosphere.

2. In a combined-cycle facility, the waste heat produced from the natural gas is captured and used to heat a boiler that generates steam. The steam is then used to drive a steam turbine and generator, which will produce additional electricity without requiring additional fuel.

to suspend the deadlines in the Purchase Agreement, including the May 9, 2006 commercial operation date. PacifiCorp rejected Desert Power's claim. When attempts to settle the dispute failed, Desert Power petitioned the Commission to resolve the dispute and requested that the Commission find that a force majeure event had occurred.

¶ 7 The Commission conducted a hearing regarding Desert Power's petition on an expedited schedule. Both parties submitted position statements, presented prefiled testimony, and conducted discovery. PacifiCorp presented evidence that indicated that Desert Power's own actions had created delays in the project, including evidence that Desert Power had supplied the technical information necessary for the interconnection design significantly later than PacifiCorp had recommended in its tariffs.

¶ 8 On September 20, 2006, the Commission issued an order in which it determined that no event of force majeure had occurred. The Commission noted early in the order that "PacifiCorp and Desert Power have experienced a number of difficulties in accomplishing the tasks and meeting milestones anticipated to bring the [qualifying facility] online" and that "because of miscalculations and difficulties in meeting timelines by both parties, this Commercial Operation Date was not achieved." In the small section of the order devoted to the force majeure determination, the Commission recited the positions of the parties and acknowledged that PacifiCorp and the Division of Public Utilities (the Division) had asserted "that the delays and difficulties that have been experienced result from the decisions and actions of PacifiCorp *and* Desert Power themselves made in the course of their efforts to develop the [qualifying facility], not from an outside source beyond the control of Desert Power or PacifiCorp." (Emphasis added.) The Commission then concluded, "We agree with the positions of Pacificorp and the Division that none of the matters Desert Power complains of are force majeure events."

¶ 9 After receiving this order, Desert Power first sought clarification of several statements contained therein. Then it applied for reconsideration. Specifically, Desert Power requested that the Commission "reconsider and reverse its determination that no event of force majeure occurred and give Desert Power the relief it should have received with extended Commercial and Scheduled Operation Dates to complete the power project." Desert Power did not object to the Commission's findings of fact or otherwise assert that the findings were insufficient. Instead, Desert Power took issue with the Commission's interpretation of the force majeure provision of the Purchase Agreement and argued that, under a correct interpretation, PacifiCorp's redesign constituted an event of force majeure. The Commission rejected Desert Power's application for reconsideration, and this request for review followed.

ISSUES AND STANDARDS OF REVIEW

¶ 10 On review, Desert Power again claims that the Commission erred in its interpretation of the force majeure provision of the Purchase Agreement and, based on the undisputed facts, Desert Power is entitled to relief as a matter of law. PacifiCorp argues that the Commission correctly interpreted the Purchase Agreement and also asserts that, even under Desert Power's interpretation, Desert Power would not qualify for relief because the Commission made a factual finding that Desert Power was partially responsible for the delays associated with the project, including the redesign of the interconnection. PacifiCorp also asserts that Desert Power failed to challenge the Commission's factual findings below and has therefore failed to preserve any issue regarding the factual findings for appellate review.

¶ 11 "Subsection 63-46-16(4) of the Utah Administrative Procedures Act (UAPA) outlines the circumstances under which a reviewing court may grant relief from formal agency action." *Anderson v. Public Serv. Comm'n*, 839 P.2d 822, 824 (Utah 1992). Under this subsection, an appellate court may "grant relief only if … it determines that a person seeking judicial review has been substantially prejudiced by" the agency's action. Utah Code Ann. § 63-46b-16(4) (2004). These actions include an "erroneous[ ] interpret[ation] or appli[cation of] the law" and "a determination of fact, made or implied by the

agency, that is not supported by substantial evidence." *Id.* § 63–46b–16(4)(d), (g).

¶ 12 An "interpretation of a contract presents a question of law," *Green River Canal Co. v. Thayn,* 2003 UT 50, ¶ 16, 84 P.3d 1134, and "when reviewing an application or interpretation of law[,] we use a correction of error standard, giving no deference to the Commission's interpretation," *Anderson,* 839 P.2d at 824. On the other hand, "[w]e uphold an agency's factual findings if supported by substantial evidence[, which] ' ... is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion.' " *WWC Holding Co. v. Public Serv. Comm'n,* 2001 UT 23, ¶ 8, 44 P.3d 714 (quoting *Harken Sw. Corp. v. Board of Oil, Gas, & Mining,* 920 P.2d 1176, 1180 (Utah 1996)). "However, before any review can be undertaken the issue must be preserved in the proceedings below." *State v. Weaver,* 2005 UT 49, ¶ 13, 122 P.3d 566.

## ANALYSIS

¶ 13 Desert Power claims that the Commission erroneously interpreted the force majeure provision of the Purchase Agreement by concluding that an event of force majeure must be a cause beyond the reasonable control of both Desert Power and PacifiCorp. Desert Power argues that the plain language of the Purchase Agreement defines an event of force majeure as "any cause beyond the reasonable control" of either "[Desert Power] *or* PacifiCorp" individually. (Emphasis added.) Based on this interpretation, Desert Power maintains that a delay caused by PacifiCorp constitutes an event of force majeure that entitles Desert Power to be excused from performance.

¶ 14 Even under Desert Power's proposed interpretation of the Purchase Agreement, Desert Power would not be entitled to relief unless it could prove that several factual conditions had been met. These factual conditions include proof that the cause of the alleged event of force majeure was "beyond the reasonable control of [Desert Power]" and that Desert Power was "unable to prevent or overcome" it. This would include evidence regarding the scope and duration of the suspended performance attributable to the event of force majeure and evidence that Desert Power had used reasonable commercial efforts to overcome problems associated with the event of force majeure.

¶ 15 Although the Commission's order did not contain a separate section expressly devoted to findings of fact, several statements in the order constitute factual findings adverse to Desert Power's claim. The Commission determined that Desert Power had made miscalculations that affected timelines. Additionally, after reciting both parties' positions regarding the force majeure provision of the Purchase Agreement, the Commission explicitly stated that it agreed with PacifiCorp's position that Desert Power had made decisions and taken actions that contributed to the delays and difficulties. This statement reflects the Commission's acceptance of not only PacifiCorp's legal arguments, but also PacifiCorp's rendition of the facts.

¶ 16 The Commission's factual determination that Desert Power's own miscalculations, decisions, and actions affected timelines and caused delays precludes Desert Power from qualifying for relief—even under its interpretation of the force majeure provision of the Purchase Agreement. Where Desert Power contributed to the delays, it cannot be said that the delays were beyond Desert Power's reasonable control or that Desert Power was unable to prevent the problem. Without establishing those factual conditions, the event cannot be considered an event of force majeure.

¶ 17 Furthermore, Desert Power has waived its right to assert any deficiencies in the factual findings because it failed to argue that those findings were insufficient. As a general principle, "[a]n applicant [before the Public Service Commission] may not urge or rely on any ground not set forth in the application in an appeal to any court." Utah Code Ann. § 54–7–15(2)(b) (Supp.2007); *see also Ball v. Public Serv. Comm'n,* 2007 UT 79, ¶ 42, 588 Utah Adv. Rep. 10 (stating that "because [appellants] did not raise any issues of error in their request for reconsideration, they did not preserve any issues for our [appellate] review" (citing Utah Code Ann.

§ 54–7–15 (Supp.2007))). Additionally, the Utah Supreme Court recently held that a party on appeal may not challenge the sufficiency of factual findings made below where that party "failed to specifically raise its objections and to introduce supporting evidence or relevant legal authority that the findings themselves were insufficiently detailed .... [thereby] denying the lower court an opportunity to correct the alleged error." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 56, 99 P.3d 801; *see also In re A.B.*, 2007 UT App 286, ¶ 11, 168 P.3d 820 ("[B]ecause [the appellant] did not raise any objection regarding the legal sufficiency of the findings with the juvenile court, that issue is not preserved, and we do not address it."); *In re K.H.*, 2004 UT App 483, ¶ 10, 105 P.3d 967 ("[A] party challenging the sufficiency of a trial court's findings of fact must raise this objection with adequate detail before the trial court to give the court an opportunity to correct the error."). Desert Power's application for rehearing and requests for clarification are devoid of any assertion that the factual findings were insufficient. Desert Power has therefore failed to preserve the issue, and such failure "bars our consideration of the issue on appeal," *Lamb v. B & B Amusements Corp.*, 869 P.2d 926, 931 (Utah 1993).

## CONCLUSION

¶ 18 We conclude that Desert Power is not entitled to relief as a matter of law. The delay of which Desert Power complains cannot be considered an event of force majeure because, even under Desert Power's interpretation of the force majeure provision of the Purchase Agreement, such an event must be beyond Desert Power's reasonable control. The Commission's factual findings demonstrate that Desert Power was at least partially responsible for the delays. Because Desert Power failed to raise any issue regarding these factual findings in its petition for rehearing, it failed to preserve the issue for appellate review. This failure bars our review of the findings.

¶ 19 We therefore affirm.

¶ 20 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.