**2017 UT App 201**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF B.A.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

R.A.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20160703-CA
Filed November 9, 2017

Third District Juvenile Court, West Jordan Department
The Honorable Renee M. Jimenez
No. 1109173

Joseph Lee Nemelka, Attorney for Appellant

Sean D. Reyes, John M. Peterson, and Emily I.
Iwasaki, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

CHRISTIANSEN, Judge:

¶1     R.A. (Father) appeals the juvenile court's order
terminating his parental rights to B.A. (Child). Father contends
that the evidence was insufficient to support the juvenile court's
findings regarding Father's fitness to parent and Child's best
interests. Father also contends that the juvenile court improperly
terminated his parental rights based upon his failure to comply
with the child and family service plan (the Service Plan). Finally,
Father contends that the juvenile court erred by allowing a lay

witness to give expert witness testimony despite not being designated as an expert. We conclude that the evidence presented at trial was sufficient to support the juvenile court's findings, that the court did not terminate Father's parental rights solely due to his failure to comply with the Service Plan, and that Father failed to adequately brief his witness contention; consequently, we affirm.

¶2     We recognize that juvenile court judges have special training, experience, and interest in their field, as well as the opportunity to judge credibility firsthand; consequently, we review a juvenile court's decision to terminate parental rights deferentially and will not disturb the juvenile court's findings and conclusions unless the preponderance of the evidence clearly militates against the findings made or the court has otherwise abused its discretion. *In re A.B.*, 2007 UT App 286, ¶ 10, 168 P.3d 820; *In re R.A.J.*, 1999 UT App 329, ¶ 6, 991 P.2d 1118.

¶3     "Utah law requires a court to make two distinct findings before terminating a parent-child relationship." *In re R.A.J.*, 1999 UT App 329, ¶ 7. "First, the court must find that the parent is below some minimum threshold of fitness, such as finding that a parent is unfit or incompetent based on any of the grounds for termination" enumerated in Utah Code section 78A-6-507. *Id.* (citation and internal quotation marks omitted). *See generally* Utah Code Ann. § 78A-6-507(1) (LexisNexis 2012) (listing the grounds for termination of parental rights). "Second, the court must find that the best interests and welfare of the child are served by terminating the parents' parental rights." *In re R.A.J.*, 1999 UT App 329, ¶ 7.

## I. Unfitness

¶4     Father first contends that the evidence was insufficient for the juvenile court to have properly found that he fell below the minimum threshold of parental fitness. Father challenges the

juvenile court's findings that: (1) he neglected Child, (2) he was an unfit or incompetent parent, (3) he had willfully refused or was unable or unwilling to remedy the circumstances that caused Child to be in an out-of-home placement, and (4) there was a substantial likelihood that Father would not be capable of exercising proper and effective parental care in the near future.

¶5　　We will uphold the termination of Father's parental rights so long as any one of the above-stated grounds was supported by sufficient evidence. *See* Utah Code Ann. § 78A-6-507(1). One of the grounds for termination set forth in the statute is whether the parent is unfit due to "habitual or excessive use of intoxicating liquors, controlled substances, or dangerous drugs that render the parent unable to care for the child." *See id.* § 78A-6-507(1)(c); *id.* § 78A-6-508(2)(c). Here, between the time the juvenile court first ordered Father to submit to random drug testing and the date of trial, Father was required to submit to drug testing over 100 times, but he only appeared for testing on 15 occasions. Of those 15 occasions, he tested positive for controlled substances on 4 occasions. Additionally, while this child-welfare case was pending, police investigated a domestic-violence incident involving Father, and Father admitted to them that he had "been using Spice."

¶6　　After this evidence was presented at trial, the juvenile court found that "[Father] has missed a majority of the required drug tests" and that "[Father] has been inconsistent in his drug testing, having only tested on a few occasions." The court also noted Father's positive tests for controlled substances and his admission to drug use. The court concluded that, for these and other reasons, Father was "unfit or incompetent, thereby justifying the termination of [his] parental rights."

¶7　　On appeal, Father challenges neither the admissibility nor the accuracy of the drug test evidence. In fact, Father mentions drug testing only to describe the procedural history of the case

and does not refer to drugs or drug testing anywhere in his arguments. Given the uncontested evidence of Father's drug use, we must conclude that a foundation existed for the juvenile court's determination that Father was an unfit parent due to his continuing use of controlled substances. And "[w]hen a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435.

¶8 Because the evidence does not "clearly preponderate[] against the findings" made by the juvenile court relating to Father's drug use, we will not disturb the drug-use findings or the conclusions resting upon them. *See In re A.B.*, 2007 UT App 286, ¶ 10, 168 P.3d 820. Because this was a sufficient basis for the juvenile court's conclusion that Father fell below the minimum threshold of parental fitness, we need not and do not review Father's challenges to the other factual bases articulated by the court in support of that conclusion.

## II. Best Interests

¶9 Father also contends that the evidence was insufficient for the juvenile court to have properly found that termination of Father's parental rights was in Child's best interests. *See generally* Utah Code Ann. § 78A-6-509(1) (LexisNexis 2012) (listing factors a juvenile court must consider before terminating a non-custodial parent's rights); *id.* § 78A-6-510 (listing factors a juvenile court must consider before terminating parental rights to a child currently placed in a foster home). Specifically, Father asserts the juvenile court based its findings in this regard "substantially on testimony" given by the mother of the foster family (Foster Mother). Father attacks Foster Mother's credibility on the ground that "Foster Mother's overarching desire to adopt [Child] substantially weakens Foster Mother's testimony and the weight that the court should afford [that testimony]." Father then asserts that, as a result of Foster Mother's alleged lack of

credibility, there was "limited evidence in favor" of termination and "ample evidence on the record to suggest otherwise."

¶10    It is the province of the factfinder to consider the potential biases of a witness when determining what weight to assign to that witness's testimony. Here, the factfinder—the juvenile court—was aware that Foster Mother wanted to adopt Child and thus that her testimony was potentially biased. The court nonetheless credited certain aspects of her testimony. On appeal, we will not substitute our judgment of evidentiary weight and credibility for that made by the juvenile court. *In re A.K.*, 2015 UT App 39, ¶ 25, 344 P.3d 1153; *In re J.P.*, 2003 UT App 297U, para. 4.

¶11    Because Foster Mother's testimony, even in light of her possible bias, along with extensive other record evidence, provided a sufficient foundation for the juvenile court's ultimate decision that termination of Father's parental rights was in Child's best interests, we cannot reweigh that evidence and thus do not disturb the juvenile court's determination. *See In re B.R.*, 2007 UT 82, ¶ 12.[1]

---

1. In his opening brief, Father claims that several positive changes in Child's behavior cannot be attributed to the foster home because those changes flowed from proper mental health treatment. However, the record is clear that Child's problematic behaviors, as well as the extensive tooth decay, sleep loss, and weight loss noted by the juvenile court, began when Child lived with Father and were finally treated only once Child began living in the foster home. Thus, regardless of whether the positive changes were the direct result of placement in the foster home, it is clear that removal from Father's custody finally allowed someone—whether the foster family or medical professionals—to treat Child's conditions.

III. Service Plan

¶12   Father further contends that the juvenile court improperly terminated his parental rights "on the basis that [he] failed to complete the requirements" of the Service Plan.[2] "The court may not terminate the parental rights of a parent because the parent has failed to complete the requirements of a child and family plan." Utah Code Ann. § 78A-6-507(2) (LexisNexis 2012).

¶13   Father argues that "the juvenile court made a specific finding that as a result of Father not complying with [the Service Plan], he 'demonstrated a failure of parental adjustment, unfitness and/or neglect and failure to remedy out-of-home placement.'" Father asserts, "Thus, the juvenile court clearly associated Father's failure to complete the requirements of the service plan with its grounds for termination of his parental rights."

¶14   Father's argument is misplaced. The statute does not prohibit a juvenile court from considering a parent's failure to comply with a child and family plan as part of the calculus of parental unfitness; rather, the juvenile court may not terminate the parent's rights *solely* because the parent did not comply with the plan or to punish the parent for noncompliance. *See In re J.T.*, 2012 UT App 253, ¶ 3, 286 P.3d 960 (per curiam). Indeed, "fail[ure] to comply substantially with the terms and conditions of a plan . . . is evidence of failure of parental adjustment." Utah

---

2. This section of Father's opening brief is titled as a challenge to the sufficiency of the evidence to support the juvenile court's finding that the Department of Child and Family Services made reasonable efforts to achieve reunification. However, the argument presented is unconnected to that topic. We address the argument made on appeal rather than the one hinted at in the section title.

Code Ann. § 78A-6-508(5). And the juvenile court's ruling makes clear that it considered Father's noncompliance only as evidence of Father's nonadjustment, unfitness, and failure to remedy the circumstances leading to the out-of-home placement.

¶15   Because the court treated Father's noncompliance merely as evidence pertinent to other issues, and did not terminate Father's parental rights solely for his failure to comply with the Service Plan put in place by the court, we conclude that the court did not err in considering Father's noncompliance.

## IV. Witness

¶16   Finally, Father contends that "[t]he juvenile court erred by allowing a lay witness to testify as an expert." More specifically, Father challenges the testimony of Child's therapist (Therapist).

¶17   At trial, Therapist testified that she had conducted a mental health assessment of Child and diagnosed him with "other specified depressive disorder." Therapist recounted Child's behaviors and symptoms that had led to that diagnosis. Therapist also testified that Child had previously been diagnosed with ADHD by another medical professional and stated which behaviors would be consistent with the ADHD diagnosis. After the State asked Therapist to explain other specified depressive disorder, Father objected that Therapist was not an expert witness. The court eventually sustained the objection, specifically preventing Therapist from testifying as to "[w]hat constitutes other specified depressive disorder."

¶18   During Father's cross-examination, Therapist stated that "ADHD can affect executive function in kids." Father asked if she could have made that statement without her training. After she responded, "No," Father then asked the court to "discount, if not strike, *any* evidence from this witness." (Emphasis added.) He stated that he was "objecting to all of her testimony where she made comments that a lay person would not know." The

juvenile court overruled this objection, noting that Therapist was a fact witness because she treated Child and that Therapist's expertise was a result of the education she had received to become a therapist.

¶19 Father's contention in this regard is inadequately briefed. Rule 24 of the Utah Rules of Appellate Procedure requires that an appellant's brief include "[a]n argument" which "shall contain the contentions and reasons of the appellant with respect to the issues presented." Utah R. App. P. 24(a)(9) (2016). Father's brief is devoid of an argument. Instead, he quotes rule 701 and rule 702 of the Utah Rules of Evidence (governing lay witness testimony and expert witness testimony respectively), recounts the testimony elicited from Therapist and the two objections he made at trial, and concludes that the issue was preserved for appeal. Father does not explain why he believes the juvenile court's determination (that the content of Therapist's testimony was within the scope of lay witness testimony) was incorrect or an abuse of discretion. Similarly, while Father does quote the relevant rules of evidence, he does not address the rationale of the juvenile court's ruling or analyze that ruling in light of the rules of evidence. Father's failures improperly shift the burden of making an argument and of finding authorities to support that argument to this court. *See State v. Davie*, 2011 UT App 380, ¶ 16, 264 P.3d 770 ("An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." (citation and internal quotation marks omitted)).

¶20 Of course, our analysis must focus on whether Father has established a sufficient argument for ruling in his favor, not merely whether his brief suffers from a technical deficiency. *See Bank of America v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d 196. *But see id.* ("[A]n appellant who fails to adequately brief an issue will almost certainly fail to carry its burden of persuasion on appeal." (citation and internal quotation marks omitted)).

¶21 It appears that Father is suggesting that Therapist's testimony exceeded the scope of permissible lay witness testimony as defined by rule 701. As noted above, the juvenile court excluded Therapist's explanation of what behaviors were generally associated with certain conditions. Therapist's remaining testimony broadly fell into two categories: a recitation of Child's behaviors and the diagnoses based on those behaviors.

¶22 Therapist's description of Child's behaviors was based on her own observations. It was therefore proper lay witness testimony because it was "rationally based on the witness's perception," was relevant, and was "not based on scientific, technical, or other specialized knowledge." *See* Utah R. Evid. 701.

¶23 Therapist's testimony regarding Child's diagnoses of ADHD and other specified depressive disorder was arguably based on scientific or specialized knowledge. But even assuming that this was expert testimony, any error in admitting the testimony was harmless. The diagnoses were also memorialized in a written psychological evaluation of Child that had been admitted into evidence for consideration by the court via stipulation of the parties. Thus, if the diagnoses portion of Therapist's testimony had been excluded, the juvenile court would have still had evidence before it that Child had been diagnosed with those conditions. Moreover, the focus of the court's ultimate determination was not on what specific conditions Child suffered from, but what negative behaviors Child exhibited and whether those behaviors had been ameliorated after Child's placement with the foster family.

¶24 Father's brief provides no reasoned analysis or argument regarding the admissibility of Therapist's testimony. But even if we assume that Therapist's testimony exceeded the bounds of proper lay witness testimony, a question we do not answer, we are unable to see how any prejudice could have resulted.

Because Father's inadequate briefing fails to address the possibility of prejudice, and because no prejudice is apparent, Father has failed to establish a sufficient argument for ruling in his favor. *See Adamson*, 2017 UT 2, ¶ 12.

¶25    Affirmed.

————————