2010 UT App 8

**STATE of Utah, Plaintiff and Appellee,**

v.

**Tina HARDING, Defendant and Appellant.**

No. 20080772–CA.

Court of Appeals of Utah.

Jan. 22, 2010.

Rehearing Denied Feb. 8, 2010.

Margaret Lindsay, Spanish Fork, for Appellant.

Mark L. Shurtleff, Atty. Gen. and Marian Decker, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges THORNE, BENCH, and GREENWOOD.[1]

## OPINION

GREENWOOD, Judge:

¶ 1 Defendant Tina Harding appeals her convictions for illegal possession or use of a controlled substance and possession of a dangerous weapon by a restricted person. These charges stem from the search of a vehicle in which Defendant was a passenger. Specifically, she appeals the trial court's denial of her motion to suppress evidence obtained during the search, arguing that the search of her bags, which were inside the rear storage compartment of the vehicle, was

---

1. Judges Russell W. Bench and Pamela T. Greenwood heard and voted on this case as regular members of the Utah Court of Appeals. They both retired from the court on January 1, 2010, before this decision issued. Hence, they are designated herein as Senior Judges. *See* Utah Code Ann. § 78A–3–103(2) (2008); Sup.Ct. R. of Prof'l Practice 11–201(6).

a violation of her Fourth Amendment rights. We affirm.

## BACKGROUND

¶ 2 Defendant was a passenger in her friend's vehicle when Officer Jeffery Westerman initiated a traffic stop for an equipment violation because the vehicle's plate lamp was inoperable. Officer Westerman ran a routine check on the driver and learned that she did not have a valid driver license. He then requested the names and birth dates of each of the three passengers and discovered that none of them had a valid driver license.[2] Officer Westerman asked the driver to exit the vehicle and issued a citation for an inoperable plate lamp and driving without a license. He then told her she was free to leave, but advised her to contact someone to come drive the vehicle because none of the passengers had a valid driver license. The driver began to walk toward her vehicle but returned to ask Officer Westerman a question. At that point, Officer Westerman asked her if he could look in the vehicle and she consented. Officer Westerman asked the passengers to exit the vehicle and told them they could wait with the backup officer "if they wanted." This second officer arrived before Officer Westerman completed his investigation and prior to the driver consenting to a search. The emergency lights on both of the officers' vehicles were off before the driver exited her vehicle.

¶ 3 During Officer Westerman's search of the vehicle he found a brown bag and a blue bag[3] in the cargo space behind the back seat of the vehicle. Before searching the bags, Officer Westerman did not ask to whom they belonged, and none of the passengers claimed ownership of them. There were no visible indications on the bags that they belonged to anyone other than the driver. The bags contained drugs and drug paraphernalia and other items indicating the bags belonged to Defendant. Officer Westerman then searched Defendant and found a lock blade knife with a three-inch blade. Officer Wes-

terman arrested Defendant and gave her Miranda warnings.

¶ 4 Defendant moved to suppress the evidence, but the trial court denied the motion. Defendant entered conditional guilty pleas, *see State v. Sery*, 758 P.2d 935, 938–40 (Utah Ct.App.1988) (discussing and expressly authorizing guilty pleas conditioned upon the ability to appeal the denial of a motion to suppress evidence), and now appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 5 Defendant argues that the trial court erred in denying her motion to suppress evidence because the evidence was obtained as a result of an illegal search and seizure. We afford little discretion to the district court's determination in cases involving the legality of a search and seizure "because there must be state-wide standards that guide law enforcement and prosecutorial officials." *State v. Hansen*, 2002 UT 125, ¶ 26, 63 P.3d 650 (internal quotation marks omitted).

## ANALYSIS

I. The Initial Detention De-escalated to a Consensual Encounter

¶ 6 Unreasonable searches are prohibited by the Fourth Amendment to the United States Constitution. *See* U.S. Const. amend. IV. This protection extends to automobile stops, although reasonable traffic stops are allowed if the "purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). When a traffic stop occurs, "the driver of the car is seized within the meaning of the Fourth Amendment .... [and] a passenger is seized as well and so may challenge the constitutionality of the stop." *Brendlin v. California*, 551 U.S. 249, 251, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). That seizure continues "[f]or the duration of a traffic stop." *Arizona v. Johnson*, —— U.S. ——, ——, 129 S.Ct. 781, 782, 172 L.Ed.2d 694 (2009). Gen-

---

**2.** Defendant initially gave a false name to Officer Westerman.

**3.** Although Defendant describes the bags as backpacks in her briefs, Officer Westerman testified that they were bags. He was the only witness who testified.

erally speaking, a traffic stop for a traffic violation observed by an officer is justified. *See Hansen,* 2002 UT 125, ¶ 30, 63 P.3d 650. Recognizing this principle, the parties in this case stipulated that the initial traffic stop was a legally valid investigatory detention.

 ¶ 7 "Once the purpose of the initial stop is concluded ... the person must be allowed to depart." *Id.* ¶ 31. Further, "[a] traffic stop that begins as a seizure may de-escalate to a mere consensual encounter." *Id.* ¶ 33. Thus, we consider whether the vehicle occupants' encounter with Officer Westerman had de-escalated from an investigatory detention to a consensual encounter before Officer Westerman asked the driver if he could look in her vehicle. Any investigatory traffic stop may properly be determined to have "de-escalate[d] to a consensual encounter when a reasonable person would believe, based on the totality of the circumstances, that he or she is free to end the encounter and depart." *Id.* ¶ 39.

 ¶ 8 In *State v. Hansen,* 2002 UT 125, 63 P.3d 650, the Utah Supreme Court addressed de-escalations to consensual encounters. By definition, " 'an encounter initiated by a traffic stop may not be deemed consensual unless the driver's documents have been returned to [her].' " *Id.* ¶ 40 (quoting *United States v. Gregory,* 79 F.3d 973, 979 (10th Cir.1996)). If the driver's documents have been returned, we consider "factors tending to show de-escalation," including "informing a person [s]he is free to leave, or that [s]he does not have to answer additional questions." *Id.* ¶ 41. By contrast, factors that weigh against de-escalation include "failure to issue a warning or citation before engaging in additional questioning" and "a coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or [the officer's] use of a commanding tone of voice indicating that compliance might be compelled." *Id.* (internal quotation marks omitted).

¶ 9 In *Hansen,* the supreme court reversed this court's decision that a traffic stop had de-escalated to a consensual encounter, determining that there was no noticeable break between the initial traffic stop and the fur-

ther questioning unrelated to the purpose for the traffic stop. *See id.* ¶ 68. In addition, the officer did not address the traffic violations before questioning the defendant about possible contraband and did not tell the defendant he was free to leave. *See id.* ¶ 45. Because the supreme court "question[ed] whether a reasonable person would feel free to leave before being issued a warning or citation, or at least being told he or she could leave," *id.,* it concluded that the "detention had not de-escalated to a consensual encounter at the time of the additional questioning; and thus, [the defendant] was illegally seized," *id.* ¶ 46.

 ¶ 10 In this case, however, the driver's documents had been returned to her and she was cited for the equipment violation and lack of a driver license. Further, there was a distinct break in the encounter when Officer Westerman told the driver she was free to leave. At that point, the purpose of the traffic stop had clearly been concluded. However, the driver then approached Officer Westerman to ask a question. While it is true that there was a backup officer present, the facts do not suggest coercion. For example, the officers' vehicles' emergency lights were off, and there is no indication that the officers' weapons were displayed, that the officers touched the driver or the passengers, or that the officer used a commanding tone of voice. *See id.* ¶ 41 (listing these criteria as examples of behavior that would indicate coercion).

¶ 11 We conclude that, under these circumstances, the driver would have reasonably felt free to leave and, therefore, the encounter had de-escalated to a consensual encounter. *See id.* ¶¶ 33–34. Thereafter, the driver consented to a search of the vehicle. Although Defendant lacked standing to object to the search because she did not own or exercise authority over the vehicle, the State stipulated that she had standing to challenge the search of her bags because she had a legitimate expectation of privacy in the bags and did not abandon them. Thus, we turn to the legality of the search of Defendant's

bags.[4]

## II. The Search of Defendant's Bags Was Legal

¶ 12 Our analysis of the legality of the search of Defendant's bags begins with the question of whether it was reasonable for Officer Westerman to conclude that the driver's consent extended to Defendant's personal belongings. As noted above, the State concedes that Defendant has standing to challenge whether the officer had a reasonable belief that the driver's consent to search the vehicle extended to Defendant's bags.

¶ 13 In *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), the United States Supreme Court stated that "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 251, 111 S.Ct. 1801 (citing *Illinois v. Rodriguez*, 497 U.S. 177, 183–89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)). In *Jimeno*, the car driver consented to a search and the officer searched a folded, brown paper bag located on the floor of the car, discovering cocaine in the bag. *See id.* The Court examined whether the consent extended to the paper bag and concluded "that it was objectively reasonable for the police to conclude that the general consent to search [the] car included consent to search containers within that car which

might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container." *Id.* Furthermore, if a person consents to a general search of their property, within which is contained property owned by another person, the consent is valid so long as the consenting party has authority over the area or has a "sufficient relationship to the premises or effects sought to be inspected." *State v. Messer*, 2007 UT App 166, ¶ 21, 164 P.3d 421.

¶ 14 The critical inquiry then is whether the police officer reasonably believed that the consenting party has sufficient authority to consent to the search. In *State v. Messer*, 2007 UT App 166, 164 P.3d 421, the police searched a car located on a third party's property with the property owner's consent and discovered contraband in bags in the car's trunk belonging to the defendant. *See id.* ¶ 4. This court noted that common authority over property was not necessarily dependent on ownership, but could also be established by possession. *See id.* ¶ 22. The search and seizure were upheld "[b]ecause the officers could have, at the very least, reasonably believed that [the property owner] had authority to consent to a search of the car trunk and its contents." *Id.* ¶ 23.

¶ 15 The State cites cases holding that a driver's consent to a vehicle search extends to the property of a third person in the vehicle when the property does not clearly belong to a person other than the driver.

---

4. Defendant's primary argument pertaining to the legality of the search is that there was no de-escalation from the seizure resulting from the traffic stop. We have determined that de-escalation did occur prior to the driver consenting to the search and that Defendant lacks standing to object to the consent to search the vehicle. However, Defendant also argued to the trial court, and briefly on appeal, that the seizure of the passengers continued during the vehicle search because the passengers could not have reasonably believed they were free to leave. The trial court rejected this argument as irrelevant because Defendant could not object to the vehicle search because she did not own the vehicle. Defendant cites no authority addressing whether, when the traffic stop is over from the driver's standpoint, it is also over for any passengers. Furthermore, Defendant does not address how, if at all, de-escalation as to the driver from a valid traffic stop to a consensual encounter affects her

status as a passenger. In this respect, Defendant's brief is inadequate. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 313 (Utah 1998) (noting that generally we will not address an inadequately briefed argument).

Our analysis assumes that, as is the case here, nothing happened to raise any suspicions about the vehicle's passengers. The only facts of record that would indicate a continued detention of the passengers is Officer Westerman's request that they exit the vehicle and suggestion that they stand by the second officer while Officer Westerman conducted the search. Nothing occurred that would cause Officer Westerman to suspect Defendant or the other passengers of illegal activity or to believe that they had a basis to object to a search of the vehicle or its contents. Given these circumstances and the lack of adequate briefing by Defendant, we decline to further address this possible issue. *See id.*

*See United States v. Hammons,* 152 F.3d 1025, 1028 (8th Cir.1998) (noting that the defendant's garment bag was properly searched where the defendant's wife consented to the vehicle search and the officers did not see identifying tags on the bag, reasonably believing that the bag belonged to the defendant's wife); *State v. Sawyer,* 147 N.H. 191, 784 A.2d 1208, 1212–13 (2001) (holding officers reasonably believed driver had authority to consent to search of bag belonging to defendant); *State v. Maristany,* 133 N.J. 299, 627 A.2d 1066, 1070 (1993) (stating officers had reasonable belief driver had authority to consent to search of luggage in vehicle trunk where there were no indications luggage belonged to passengers). The State further contends that because the ultimate test of a search's legality is objective reasonableness, police officers are not required to seek permission to open each closed container during a consensual vehicle search, because consent to search a vehicle "is equivalent to general consent to search the vehicle and its contents, including containers such as luggage," *United States v. Crain,* 33 F.3d 480, 484 (5th Cir.1994) (citing *United States v. Rich,* 992 F.2d 502, 508 (5th Cir.1993)).

¶ 16 Defendant disagrees with the State's application of this case law and argues that the driver's consent in this case did not extend to Defendant's bags located in the rear of the car. In support of that argument Defendant urges us to adopt the rule applied in *State v. Frank,* 650 N.W.2d 213 (Minn.Ct. App.2002). There, a vehicle was stopped for having only one working headlight. *See id.* at 215. After citing the driver for the equipment violation, the officer became suspicious of drug activity, separated the individuals in the car, and asked the driver for and received permission to search the vehicle. *See id.* The officer opened the trunk of the vehicle and found two suitcases. *See id.* The officer did not ask who owned the suitcases and did not ask permission from the passengers to search the suitcases. *See id.* The officer found drugs and later learned that the suitcase belonged to the defendant, a passenger in the vehicle. *See id.* The Minnesota court reviewed cases from other jurisdictions and "conclude[d] that the cases holding that a driver's consent to search a

motor vehicle does not extend to property owned by passengers who are present and available to consent to the search of their property are more consistent with constitutional limits on warrantless searches than the cases that conclude otherwise." *Id.* at 218–219. The Minnesota court held that, "when a vehicle search is based only on consent, an officer has an obligation to ascertain the ownership of items not owned by or within the control of the consenter when the circumstances do not clearly indicate that the consenter is the owner or controls the items to be searched." *Id.* at 219.

¶ 17 Here, Defendant argues that a reasonable person in Officer Westerman's position would reasonably believe that the bags belonged to one of the three passengers rather than to the driver. The presence of the three passengers and the location of the bags in the small storage space behind the rear passenger seat would lead to that reasonable belief. Under these circumstances, Defendant asserts, Officer Westerman should have inquired about the bags' ownership and sought consent to search from anyone who asserted ownership. Defendant contends that without having done so, Officer Westerman's search of the bags was illegal. We do not agree, and we believe that *Frank's* requirement is too sweeping.

¶ 18 As acknowledged in *Frank,* in determining what justifies a legal search, "[e]ach case depends on what is an objectively reasonable belief for the officer to hold in a particular situation." *Id.* at 217 (citing *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)). If items in a vehicle clearly do not belong to a consenting driver and there are passengers who may likely own the items, the driver's consent to search would not reasonably extend to those items. Examples might include an item with a label or tag indicating ownership, or a purse, when there is a male driver and a female passenger. *See United States v. Welch,* 4 F.3d 761, 764 (9th Cir.1993) (stating that under the circumstances it was not reasonable for officers to believe male driver had authority to consent to search of his passenger/girlfriend's purse). Other situations where the vehicle's contents are more

anonymous would likely lead to an objectively reasonable belief that the consenting driver owned and/or exercised control over the vehicle and items contained therein.

¶ 19 The particulars of the situation in this case lead us to conclude that the search of Defendant's bags was based on a reasonable belief that they belonged to the driver and that the driver had authority to consent to their search. These particulars include the following, taken from the brief testimony of Officer Westerman, the only witness called to testify: (1) there was a small storage area in the rear of the car behind the backseat; (2) items in this storage area included a brown bag and a dark blue bag, and various loose items; (3) there was nothing on or about the bags to indicate they belonged to anyone other than the driver; (4) the vehicle's occupants consisted of the driver and three passengers; (5) neither the driver nor any of the passengers informed Officer Westerman about where they had been or where they were going; (6) none of the vehicle's occupants stated that the bags belonged to anyone other than the driver; and (7) no one objected to the search. Under these circumstances it was objectively reasonable for Officer Westerman to believe the bags belonged to the driver. Any belief that the bags belonged to one of the passengers would necessarily be based on speculation. On the other hand, it is patently reasonable to believe that a car owner would toss or place bags or other items in a small storage area of a car, located behind the passenger seat. We therefore conclude that under these circumstances, search of Defendant's bags was lawful.

¶ 20 Affirmed.

¶ 21 I CONCUR: RUSSELL W. BENCH, Senior Judge.

THORNE, Judge (dissenting):

¶ 22 I respectfully dissent from the majority opinion, as I cannot agree with its conclusion that the search of Defendant's bags pursuant to the driver's consent was permissible. Here, the trial court expressly found that, under the circumstances, Officer Westerman "had no way of knowing whose bags they were." Accordingly, I disagree that

Officer Westerman can be said to have had a reasonable belief as to the driver's ownership of the bags, and I would hold that the State failed to meet its burden of demonstrating that the driver had the apparent authority to consent to the search of Defendant's bags.

¶ 23 Both the trial court and, to a lesser extent, the majority opinion treat this as a case about the scope of the driver's consent. It is not. There is no dispute that, had the bags belonged to the driver, permission to search the bags would have been included within the scope of her consent to search the car. *See Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) ("We think that it was objectively reasonable for the police to conclude that the general consent to search respondents' car included consent to search containers within that car which might bear drugs."). Rather, the question presented in this case involves the driver's *authority* to consent to the search of the bags.

¶ 24 " 'If a third party rather than the defendant consents to a search, the third party must be one who possesses "common authority" over the area or has some other "sufficient relationship to the premises or effects sought to be inspected." ' " *State v. Messer,* 2007 UT App 166, ¶ 21, 164 P.3d 421 (quoting *State v. Brown,* 853 P.2d 851, 855 (Utah 1992)). "Moreover, a search is valid even in instances where the third party does not possess common authority, as long as the police 'reasonably believe[ ]' " that the third party possesses such authority. *Id.* (alteration in original) (quoting *Illinois v. Rodriguez,* 497 U.S. 177, 189, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)). However, the State bears the burden of establishing that one who consents to a search has the authority to do so. *See Brown,* 853 P.2d at 855 ("The State bears the burden of proving common authority, and it must do so by a preponderance of the evidence."); *see also State v. Worwood,* 2007 UT 47, ¶ 23, 164 P.3d 397 ("When challenged, the [S]tate has the burden of proving the reasonableness of the officer's actions during an investigative detention.").

¶ 25 It is undisputed in this case that the driver did not have actual authority to con-

sent to the search of Defendant's bags.[5] Thus, in order for the State to justify the search, it must demonstrate that the facts known to Officer Westerman would nevertheless have caused a person of reasonable caution to conclude that the driver had such authority. *Cf. State v. Duran*, 2005 UT App 409, ¶ 14, 131 P.3d 246 ("If the facts known to the officers would not cause a person of reasonable caution to conclude that the consenting party had authority over the premises, 'then warrantless entry without further inquiry is unlawful unless authority actually exists'" (quoting *Rodriguez*, 497 U.S. at 188–89, 110 S.Ct. 2793)). It appears that the only indicia of ownership or control of the bags was their mere presence in the driver's vehicle, along with multiple passengers and in an area accessible to those passengers. As the trial court aptly found, this information alone gave Officer Westerman "no way of knowing whose bags they were."

¶ 26 At best, Officer Westerman was presented with a situation where ownership and control of the bags was ambiguous. Utah law requires further inquiry before a consent search can be deemed valid in such ambiguous situations. *See id.* ¶ 17 ("The officers were faced with an ambiguous situation concerning the trailer. Although it was owned by Mother, it was rented to Horvath. Despite that ambiguity, the officers made no further inquiry and proceeded with the warrantless [consent] search. The search was not lawful ...." (footnote omitted)); *State v. Davis*, 965 P.2d 525, 533 (Utah Ct.App.1998) (stating that the State's burden to prove common authority cannot be met "'if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry'" (quoting *United States v. Whitfield*, 939 F.2d 1071, 1075 (D.C.Cir.1991))).

¶ 27 Had Officer Westerman made further inquiry, he could likely have easily ascertained that the bags belonged to Defendant and sought her consent to search them. If further inquiry had resulted in the passengers, including Defendant, denying ownership of the bags, then Officer Westerman would have had some reason to believe that the bags belonged to the driver. Or, had everyone denied ownership of the bags, then perhaps an abandonment analysis would have been appropriate. *See generally State v. Rynhart*, 2005 UT 84, ¶ 21, 125 P.3d 938 (discussing abandonment); *see also United States v. Veatch*, 674 F.2d 1217, 1220–21 (9th Cir.1981) (finding abandonment where the defendant disclaimed ownership of a wallet found on the seat of a vehicle). Here, however, Officer Westerman made no inquiry whatsoever and, thus, his search of Defendant's bags pursuant to the driver's consent cannot be deemed objectively reasonable under Utah case law governing consent searches.

¶ 28 Because I would suppress the results of the search of Defendant's bags under existing Utah case law, I see no need to rely on Defendant's primary source of authority, *State v. Frank*, 650 N.W.2d 213 (Minn.Ct. App.2002). However, I agree with the logic and analysis of *Frank* and note that its common-sense holding is itself merely another way of stating Utah's law that a consent search based on apparent authority is not valid in the face of ambiguity of ownership or control. *See id.* at 219 ("[W]hen a vehicle search is based only on consent, an officer has an obligation to ascertain the ownership of items not owned by or within the control of the consenter when the circumstances do not clearly indicate that the consenter is the owner or controls the item to be searched.").

¶ 29 When Officer Westerman searched Defendant's bags pursuant to the driver's consent, he had "no way of knowing whose bags they were." Faced with this ambiguity as to whose bags they were, Officer Wester-

---

**5.** The trial court found that Defendant had not abandoned her bags and retained a legitimate expectation of privacy in them. Further, this is not a case where Defendant left her bags in the care of a third person and thereby took the risk that the third person might not respect her privacy. *See, e.g., State v. Messer*, 2007 UT App 166, ¶ 22, 164 P.3d 421 ("[I]n leaving the bags in Hasch's car on Hasch's property, [d]efendant took the risk that Hasch might not maintain [d]efendant's privacy interest in the bags."); *see also United States v. Austin*, 66 F.3d 1115, 1119 (10th Cir.1995) ("By leaving his bag in the possession and control of [a third party], defendant assumed the risk that [the third party] would allow the authorities access to the bag.").

man's search, without further inquiry, is objectively unreasonable and, therefore, unlawful. *See Duran*, 2005 UT App 409, ¶ 17, 131 P.3d 246; *Davis*, 965 P.2d at 533. For these reasons, I would suppress the results of the search and reverse Defendant's resulting convictions, and I respectfully dissent from the majority opinion.