2011 UT 78

**STATE of Utah, Plaintiff and Respondent,**

v.

**Tina HARDING, Defendant and Petitioner.**

No. 20100291.

Supreme Court of Utah.

Dec. 16, 2011.

Rehearing Denied April 23, 2012.

**32**

Mark L. Shurtleff, Att'y Gen., Marian Decker, Asst. Att'y Gen., Salt Lake City, for respondent.

Margaret P. Lindsay, Provo, for petitioner.

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 The sole question before us is whether a police officer may search two backpacks belonging to a passenger in an automobile after receiving only the driver's consent to search the vehicle. The district court's factual findings are not sufficiently particularized for us to conclusively make this determination. We therefore remand with instructions for the district court to make additional factual findings.

## BACKGROUND

¶ 2 Tina Harding was one of three passengers in a vehicle that was stopped by Officer Jeffrey Westerman on February 22, 2008. Officer Westerman had the driver exit the vehicle, issued her a citation, and then told the driver she was free to leave. While the passengers remained in the vehicle, the driver returned to ask Officer Westerman a question. At that time, Officer Westerman asked the driver if he "could take a look in the vehicle," and the driver consented. Officer Westerman then asked the passengers to exit the vehicle and wait with a back-up officer while Officer Westerman "took a look in the vehicle." Officer Westerman found several bags, including two backpacks,[1] in the

---

1. Upon its review of the district court's denial of Ms. Harding's motion to suppress, the court of appeals concluded that Officer Westerman searched Ms. Harding's "bags," rather than her backpacks. Specifically, the court noted in a footnote that the only witness who testified at the district court hearing, Officer Westerman, testified that they were "bags" rather than "back-

packs." The court of appeals' characterization of the facts is incorrect. We have reviewed the hearing transcript in its entirety. In it, Officer Westerman repeatedly refers to Ms. Harding's "backpacks." For example, in response to questioning by the prosecutor, Officer Westerman testified to the following: "Directly behind the area where the defendant was seated were locat-

cargo compartment of the SUV, directly behind the rear passenger seat in which Ms. Harding was seated. Officer Westerman did not seek any information about who owned the backpacks or the other bags and proceeded to search all of them. In the backpacks he found "items identifying Ms. Harding as the owner of the bags," including pieces of Ms. Harding's mail. Officer Westerman also discovered drugs and paraphernalia in the backpacks. The backpacks belonged to Ms. Harding.

¶ 3 The State charged Ms. Harding with possession of methamphetamine, possession of a dangerous weapon by a restricted person, provision of false information to a peace officer, and possession of paraphernalia. The false information and paraphernalia charges were dismissed. Ms. Harding moved to suppress the evidence discovered during the search. The parties stipulated that the initial traffic stop was legal and that Ms. Harding had standing to challenge the search because she had a legitimate expectation of privacy in her backpacks and she never abandoned them. The district court denied Ms. Harding's motion, holding that it would have been reasonable for Officer Westerman to have understood the driver's consent to extend to Ms. Harding's backpacks. Ms. Harding thereafter entered a conditional guilty plea to the methamphetamine possession and dangerous weapon charges.

¶ 4 Ms. Harding appealed her conviction to the Utah Court of Appeals. As to the sole question now presented, she asserted that Officer Westerman had improperly assumed the driver had authority to consent to the search of her backpacks. A majority of the panel of the court of appeals affirmed. *State v. Harding*, 2010 UT App 8, ¶ 1, 223 P.3d 1148. The majority concluded that Officer Westerman could have reasonably believed the driver had authority to consent to the search of Ms. Harding's bag and noted that

any belief that the bags belonged to a passenger would have been based on speculation. *Id.* ¶ 19.

¶ 5 Judge Thorne dissented, reasoning that "the State bears the burden of demonstrating that one who consents to a search has the authority to do so." *Id.* ¶ 24 (Thorne, J., dissenting). Relying on the district court's determination that the officer "had no way of knowing whose bags they were," Judge Thorne concluded that the officer could not "be said to have had a reasonable belief as to the driver's ownership of the bags." *Id.* ¶ 22 (Thorne, J., dissenting). "[T]he only indicia of ownership or control of the bags was their mere presence in the driver's vehicle, along with multiple passengers and in an area accessible to those passengers." *Id.* ¶ 25 (Thorne, J., dissenting). Thus, Judge Thorne concluded that under the facts of the case, "[a]t best" ownership of the bags was ambiguous. *Id.* ¶ 26 (Thorne, J., dissenting). According to Judge Thorne, when ownership is ambiguous, an officer must make further inquiry to determine ownership before proceeding. *Id.* (Thorne, J., dissenting).

¶ 6 We granted Ms. Harding's petition for a writ of certiorari as to the following issue: "Whether the majority of the panel of the court of appeals erred in its analysis and/or application of the Fourth Amendment standards governing the apparent authority of a person to consent to a search of another person's property."[2] We have jurisdiction under section 78A–3–102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

¶ 7 On certiorari, we review a decision of the court of appeals for correctness. *Harold Selman, Inc. v. Box Elder Cnty.*, 2011 UT 18, ¶ 15, 251 P.3d 804. "The correctness of the court of appeals' decision turns on whether that court accurately re-

---

ed two backpacks. The contents of each backpack contained items specific to Ms. Harding...." We therefore refer to Ms. Harding's "backpacks," even though the court of appeals referred to Ms. Harding's bags.

**2.** As framed, the question on certiorari does not present any issue as to whether the driver of the vehicle had actual common authority to consent

to the search of Ms. Harding's backpacks. And the State does not contend that the automobile exception applies. In addition, Ms. Harding's standing to challenge the search is not at issue because the State stipulated that Ms. Harding had a legitimate expectation of privacy in her backpacks and that she never abandoned them.

viewed the [district] court's decision under the appropriate standard of review." *State v. Visser*, 2000 UT 88, ¶ 9, 22 P.3d 1242. In a search and seizure case, the reviewing court independently applies the facts to the constitutional standard to determine whether the search is lawful. *See State v. Duran*, 2007 UT 23, ¶ 5, 156 P.3d 795.

## ANALYSIS

¶ 8 Ms. Harding argues that Officer Westerman violated her Fourth Amendment right to be free from unreasonable searches by searching her backpacks, which were located in the cargo compartment of the SUV in which she was riding, without her consent. She contends that it was unreasonable under the circumstances for Officer Westerman to believe that the driver's consent to search the vehicle extended to her backpacks. We agree.

¶ 9 At the outset, we note that Ms. Harding's claim was brought wholly under the Fourth Amendment to the United States Constitution. Ms. Harding has not argued that her rights under the Utah Constitution have been violated. Thus, despite our pronouncement that "we will not hesitate to give the Utah Constitution a different construction where doing so will more appropriately protect the rights of this state's citizens," *State v. DeBooy*, 2000 UT 32, ¶ 12, 996 P.2d 546,[3] our analysis in this case proceeds solely under federal Fourth Amendment principles.

■ ¶ 10 The Fourth Amendment to the United States Constitution prohibits unreasonable searches. *See* U.S. CONST. amend. IV. A warrantless search is per se unreasonable unless it comes within one of a few recognized exceptions. *Kentucky v. King*, — U.S. —, —, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011). One such exception applies where the officer has consent to search the property. *Id.* at 1858. Consent may come from the person whose property is to be searched, *Georgia v. Randolph*, 547 U.S. 103, 109, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), from a third party who has common authority over the property, *id.*,[4] or from a third party who has apparent authority to consent to a search of the property, *Illinois v. Rodriguez*, 497 U.S. 177, 186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).

■ ¶ 11 Whether a third party has actual common authority over property is determined by the test articulated in *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The test is whether the third party has mutual use and control of the property such that the other party has "assumed the risk that [the third party] might permit the [property] to be searched." *Id.* at 171 n. 7, 94 S.Ct. 988.

■ ¶ 12 Whether a third party has "apparent authority" to consent to a search of another's property is governed by the standard articulated by the United States Supreme Court in *Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793. Under that standard, a warrantless search is valid where the police reasonably, but mistakenly, believe that a third party consenting to a search has the authority to do so. *Id.* at 186, 110 S.Ct. 2793. The test is an objective one: a police officer's belief is reasonable when "the facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that the consenting party had authority over the" items to be searched. *Id.* at 188, 110 S.Ct. 2793 (alteration in original) (internal quotation marks omitted). This standard leaves room for reasonable mistakes on the part of police officers. The requirement "is not that [officers] always be correct, but that they always be reasonable." *Id.* at 185, 110 S.Ct. 2793. In some circumstances, the facts surrounding a driver's consent to search could "be such that a reasonable person would doubt" the driver's authority "and not act upon it without further inquiry." *Id.* at 188, 110 S.Ct. 2793. But not every possible "doubt" requires further inquiry. The ulti-

**3.** *See also Brigham City v. Stuart*, 2005 UT 13, ¶ 10, 122 P.3d 506 (stating that "federal Fourth Amendment protections may differ from those guaranteed our citizens by our state constitution"), *rev'd on other grounds*, 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

**4.** *See also State v. Brown*, 853 P.2d 851, 855 (Utah 1992) (noting that one with "common authority" over a premises may consent to search of the premises).

mate touchstone is reasonableness, and the ultimate question is therefore whether any doubt an officer may have is sufficient to undermine a reasonable belief that the driver had authority to consent to the search.

■■■ ¶ 13 The *Rodriguez* apparent authority rule applies only to mistakes of fact; *Rodriguez* cannot "validate ... a search premised upon an erroneous view of the law." *United States v. Brown,* 961 F.2d 1039, 1041 (2d Cir.1992) (per curiam).[5]  Reasonableness "is measured ... by examining the totality of the circumstances," *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996), and the burden is on the State to prove the reasonableness of the officer's actions, *see Rodriguez,* 497 U.S. at 181, 110 S.Ct. 2793.[6]

■ ¶ 14 The State does not contend that the driver had actual common authority to consent to the search of Ms. Harding's backpacks, nor is there evidence that the driver possessed such authority.  Rather, the State's only argument is that the warrantless search was constitutionally permissible under the *Rodriguez* apparent authority doctrine. Thus, we will uphold the search of Ms. Harding's backpacks only if Officer Westerman could have reasonably believed that the driver either owned the backpacks or had common authority over them.

¶ 15 We have never addressed the applicability of the apparent authority doctrine in the context of a search and seizure case. And, although the United States Supreme Court sketched the legal contours of the doctrine in *Rodriguez,* the Court has not applied the apparent authority framework in the automobile context.  But other state and federal courts have.  These courts have en-

gaged in a fact-specific, totality-of-the-circumstances inquiry to determine whether it would have been reasonable for the police officer to believe that the driver had the authority to consent to the search of the passenger's belongings.

■ ¶ 16 Courts applying *Rodriguez*'s apparent authority doctrine are generally in agreement that an officer's search of a passenger's belongings based only on a driver's consent is unreasonable where the facts clearly indicate the driver has no authority over the items to be searched.  For example, courts are unanimous in holding that it is unreasonable for an officer to search a female passenger's purse after obtaining only the consent of a male driver because it is unreasonable to believe that the man has authority over the woman's purse.  *See United States v. Welch,* 4 F.3d 761, 765 (9th Cir.1993); *State v. Friedel,* 714 N.E.2d 1231, 1240–41 (Ind.Ct.App.1999); *State v. Caniglia,* 1 Neb.App. 730, 510 N.W.2d 372, 374 (1993); *State v. Zachodni,* 466 N.W.2d 624, 628 (S.D. 1991), *abrogated on other grounds by State v. Akuba,* 686 N.W.2d 406 (S.D.2004).  And a Florida court held that it was unreasonable for an officer to search a passenger's fanny pack based only on the driver's consent where the officer had observed the passenger sitting in the car with the fanny pack on her lap.  *Brown v. State,* 789 So.2d 1021, 1021–22 (Fla.Dist.Ct.App.2001).  Similarly, a federal court held that it was unreasonable for an officer to search a passenger's briefcase in the trunk of a car without obtaining the passenger's consent after the driver informed the officer the briefcase belonged to the passenger.  *United States v. Infante–Ruiz,* 13 F.3d 498, 505 (1st Cir.1994).[7]

**5.** *See also United States v. Davis,* 332 F.3d 1163, 1170 (9th Cir.2003) (holding that where "officers were aware of the actual facts that established Smith's lack of authority to consent to the search of Davis' bag," the officers' belief that Smith could consent to the search of Davis' bag was a "mistaken belief as to the law" that "even if reasonable, cannot establish apparent authority"); *United States v. Gutierrez–Hermosillo,* 142 F.3d 1225, 1230 (10th Cir.1998) ("If the officers believed that a minor child could give consent when as a matter of law she could not, *Rodriguez* would not validate this search.").

**6.** *See also State v. Worwood,* 2007 UT 47, ¶ 23, 164 P.3d 397 (noting that "the state has the burden of proving the reasonableness of the officer's actions during an investigative detention").

**7.** *See also United States v. Jaras,* 86 F.3d 383, 389–90 (5th Cir.1996) (holding that the search of a passenger's suitcases was unreasonable where the consenting driver informed the officer that the suitcases were not his and the officer did not obtain the passenger's consent); *State v. Suazo,* 133 N.J. 315, 627 A.2d 1074, 1077 (1993) (holding that the search of a passenger's bag was unreasonable based only on the driver's consent

¶ 17 When ownership of the items searched is more ambiguous, the reasonableness of an officer's reliance upon the driver's consent often presents a closer question. For example, in *People v. James*, 163 Ill.2d 302, 206 Ill.Dec. 190, 645 N.E.2d 195 (1994), the Illinois Supreme Court considered the reasonableness of an officer's search of a passenger's purse after obtaining the driver's consent to search the vehicle. The driver of the vehicle and two passengers were women. *Id.*, 206 Ill.Dec. 190, 645 N.E.2d at 197. The officer directed the driver and the passengers to exit the car. *Id.* Upon exiting the vehicle, the front seat passenger, Ms. James, left her purse on the seat. *Id.* After obtaining the driver's consent to search the vehicle, the officers opened Ms. James' purse and found cocaine. *Id.*

¶ 18 The court concluded that the evidence obtained pursuant to this search must be suppressed because the officer could not reasonably have determined that the driver had authority to consent to a search of Ms. James' purse. *Id.*, 206 Ill.Dec. 190, 645 N.E.2d at 203. In reaching its conclusion, the court emphasized that the officers should have realized that the purse could have belonged to any one of the three women in the car. *Id.* The court also found it significant that the purse was found on the passenger seat, not on the driver's seat. *Id.* In addition, according to the court, "[i]t would have been unreasonable for the officer to believe that [the driver] shared some common use in the purse with one of the passengers in the vehicle, since a purse is generally not an object for which two or more persons share common use and authority." *Id.* Finally, the court emphasized that Ms. James was unaware of the driver's consent, did not know the purpose for the search, and was unaware that she was being asked to exit the vehicle so that the officers could search the automobile. *Id.* Based on the totality of the circumstances, the court concluded that the officer "should have ascertained who owned the purse he found in the ... vehicle before he opened and searched the contents of the purse." *Id.*

¶ 19 The recent case of *United States v. Munoz*, 590 F.3d 916 (8th Cir.2010), presents another example where circumstances surrounding the ownership of the property to be searched were ambiguous. In that case, after being stopped for speeding, the driver provided the officer with a copy of a rental agreement indicating that the vehicle had been rented by the passenger, Smith. *Id.* at 919. The driver, Munoz, whose license had been suspended, told the officer that he had taken over driving for Smith after Smith had become tired. *Id.* After directing Munoz to the passenger seat of his police cruiser, the officer asked Munoz for permission to search the vehicle and told Munoz that he would also ask Smith because she had rented the vehicle. *Id.* Munoz replied that the officer would have to ask Smith. *Id.* While Munoz remained in the cruiser, the officer returned to the vehicle and asked Smith for permission to search it. *Id.* at 919–20. Smith consented to the search. *Id.* at 920. Upon searching a backpack on the floorboard of the passenger seat, the officer found a firearm, drugs, and drug paraphernalia. The backpack belonged to Munoz. *Id.*

¶ 20 The court concluded that Munoz's Fourth Amendment rights were violated when the officer conducted a warrantless search of Munoz's backpack without first obtaining his consent. *Id.* at 923. The court reasoned that "there were two people in the car who each had been sitting in the passenger seat during the trip." *Id.* In such a circumstance, the officer "did not reasonably believe that Smith had authority to consent to the search of the backpack." *Id.* Because the backpack could logically have belonged to either Smith or Munoz, the officer could not reasonably rely on Smith's consent alone; rather, the officer should have determined who owned the backpack before proceeding to search it. *See id.*

¶ 21 Similarly, in *State v. Frank*, 650 N.W.2d 213 (Minn.Ct.App.2002), the Minnesota Court of Appeals concluded that an officer could not reasonably conclude that a driver's consent to search a vehicle extended to the passenger's suitcase located in the trunk. The vehicle contained three occu-

where the officer was aware that the bag be-     longed to the passenger).

pants, the passenger did not hear the driver give consent to search the vehicle, and the trunk contained two suitcases. *Id.* at 215. The court held that the evidence obtained pursuant to the search must be suppressed because, under these circumstances, there was "no factual basis for a finding of apparent authority of the driver to consent to the search of [the passenger's] suitcase." *Id.* at 219.

¶ 22 In *Norris v. State,* 732 N.E.2d 186 (Ind.Ct.App.2000), the court concluded that a trooper's search of a passenger's backpack was objectively unreasonable. There were three occupants in the vehicle. *Id.* at 187. The trooper obtained the driver's consent to search the vehicle out of the hearing of the passengers. *Id.* The officer found a backpack on the back seat of the car next to where the passenger had been sitting. *Id.* Inside the backpack, the officer found a handgun. *Id.* Because the backpack was located in the back seat of the vehicle, the court concluded that a reasonable trooper would "realize that the backpack might belong to one of the passengers rather than [the driver]." *Id.* at 190. The court also found that "[i]t would have been unreasonable for the trooper to believe that [the driver] shared some common use in the backpack with one of the passengers in the vehicle, since a backpack, like [a] purse . . . , is generally not an object for which two or more persons share common use and authority." *Id.* at 191. Finally, the court stressed that the passenger did not know that the driver had given the trooper consent to search the vehicle. *Id.*

¶ 23 Courts do not always resolve ambiguous ownership situations in favor of the defendant. For example, in *State v. Sawyer,* 147 N.H. 191, 784 A.2d 1208 (2001), the Supreme Court of New Hampshire concluded that it was reasonable for an officer to search a passenger's bag after obtaining only the driver's consent to search the vehicle. In that case, the officer asked the driver for consent to search the vehicle for weapons and drugs. *Id.* at 1209. The driver consented to the search, and the officer then directed the two passengers to exit the vehicle. *Id.* During his search of the vehicle, the

officer detected the smell of marijuana apparently emanating from a black nylon bag on the floor behind the driver's seat. *Id.* at 1210. "The bag . . . was of the type often used to hold tape cassettes or compact discs." *Id.* The officer opened the bag and found marijuana. *Id.*

¶ 24 In upholding the search, the court stressed that the officer made it clear when seeking consent that he would be searching for drugs, thereby making it "logical for the police to assume that they had permission to search containers inside the car that might contain drugs." *Id.* at 1212. The court also emphasized that the item searched was a cassette tape or compact disc case, a type of container that an officer could reasonably believe the driver either owned or had common access to. *Id.* at 1212–13. The fact that the bag was behind the driver's seat strengthened the reasonableness argument. *Id.* Finally, the court noted that the passenger did not object to the search of his bag. *Id.* at 1213.

¶ 25 In a similar case, the Supreme Court of New Jersey upheld an officer's search of a bag belonging to a passenger in a vehicle based only on the driver's consent to search the car. *State v. Maristany,* 133 N.J. 299, 627 A.2d 1066 (1993). In that case, after becoming suspicious because of the inconsistent responses of the driver and passenger, the officer asked the driver if there was any luggage in the trunk. *Id.* at 1067. The driver responded that the trunk contained a blue canvas bag and a brown suitcase. *Id.* The driver thereafter signed a consent-to-search form that authorized the officer to " 'conduct a complete search of trunk portion of vehicle including blue canvas bag, brown suitcase, also includes interior portion of vehicle.' " *Id.* After the driver opened up the trunk for the officer's inspection, the officer found cocaine in the blue canvas bag. *Id.*

¶ 26 Over a vigorous dissent, the court upheld the search of the blue canvas bag, concluding that the officer could reasonably have believed that the driver had the authority to consent to the search of the bag. *Id.* at 1069. The court stressed the driver's knowledge of the contents of the trunk, reasoning that his "knowledge of the contents of the

trunk, prior to the search, ... supported the belief that [the driver] had apparent authority to consent." *Id.* at 1070. The court also found it significant that the bag did not contain identification on its exterior. *Id.* Finally, the court noted that the passenger did not claim ownership of the bag. *Id.*

¶ 27 The dissenting justices took the majority's opinion to task, stating that it "creates the wrong incentive" and "puts a premium on ignorance" because under the majority's opinion, "as long as police officers do not know whose property they are searching, they can search at will." *Id.* at 1071 (Pollock, J., dissenting). According to the dissent, the facts known to the officer "would have left a reasonable person in doubt about [the driver's] authority to consent to search both bags." *Id.* at 1072 (Pollock, J., dissenting). Because the passenger was unaware that the driver had consented to a search of the vehicle, *Id.* at 1067, the dissenting justices were particularly concerned with the majority's suggestion that the passenger had impliedly consented to the search by failing to claim ownership of the bag. *Id.* at 1072–73 (Pollock, J., dissenting). The dissent also reasoned that, given a situation where there were two occupants in the car and two bags, the officer "should not have concluded, without having solicited contrary information, that one man owned both bags and the other owned neither bag." *Id.* at 1073 (Pollock, J., dissenting).

¶ 28 As these cases demonstrate, courts measure the reasonableness of an officer's actions against a variety of factors when applying the apparent authority doctrine in the context of a vehicle search. The type of container searched is often significant. For example, it is reasonable to believe that the driver of a vehicle has access to certain items found in the vehicle, tending to support the reasonableness of the officer's search of such items, even if it ultimately turns out that the particular item belongs exclusively to the passenger.[8] On the other hand, it is unreasonable for a police officer to believe that a third party has access to a defendant's purse "since a purse is generally not an object for which two or more persons share common use and authority." *James*, 206 Ill.Dec. 190, 645 N.E.2d at 203.[9] In this regard, "a backpack, like a suitcase, is a repository for personal items when one wishes to transport them." *United States v. Meier*, 602 F.2d 253, 255 (10th Cir.1979) (internal quotation marks omitted). Thus, though not as personal in nature as a purse, a backpack is a container suggesting individual, not common, ownership. *See Norris*, 732 N.E.2d at 191 (stating that "a backpack, like [a] purse ..., is generally not an object for which two or more persons share common use and authority").

¶ 29 Courts also routinely consider the conduct of the passenger in connection with the search. Courts reason that an officer's search of a passenger's belongings is more reasonable when the passenger remains silent when he could be expected to object to the search of his belongings.[10] But the rea-

---

**8.** *See Sawyer*, 784 A.2d at 1212–13 (upholding an officer's search of a passenger's tape cassette or compact disc case because, considering the nature of the item, it was reasonable for the officer to believe the driver either owned the container or had access to it).

**9.** *See also Brown*, 789 So.2d at 1024 (stating that a "fanny pack, like a purse, is a container suggesting individual ownership, in which a person has a significant expectation of privacy").

**10.** *See United States v. Navarro*, 169 F.3d 228, 232 (5th Cir.1999) (upholding the search of a passenger's belongings where the driver gave consent to search the vehicle and the passenger did not object when the officer began searching the passenger's bag on the back seat); *United States v. Stapleton*, 10 F.3d 582, 584 (8th Cir. 1993) (concluding that a driver of a car had

apparent authority to consent to a search of items in the car belonging to a passenger where the passenger "remained silent when told of the search and the object of the search"); *United States v. Langston*, 970 F.2d 692, 698 (10th Cir. 1992) (upholding the search of a passenger's belongings in a trunk because the passenger "remain[ed] silent while the driver consented to, and assisted in, the search"); *State v. Walton*, 565 So.2d 381, 383–84 (Fla.Ct.App.1990) (holding that an officer's search of a passenger's belongings was reasonable based only on the driver's consent where the passenger did not object to the search and there was nothing to alert the officer that the bag searched belonged to the passenger); *State v. Frizzel*, 132 Idaho 522, 975 P.2d 1187, 1190 (Idaho Ct.App.1999) (holding that it was reasonable for an officer to search a backpack belonging to a passenger based only on

sonableness of the officer's actions is not increased when the passenger's silence can be attributed to a lack of awareness that his belongings were about to be searched.[11]

¶ 30 Courts also consider whether there is anything on the exterior of the container, such as identification tags, that would indicate that it does not belong to the driver.[12] The number of occupants in the vehicle is another important consideration. Generally, the reasonableness of an officer's belief that the driver has authority over all the contents of a vehicle decreases as the number of occupants and the number of items in the vehicle increase. Stated another way, it is less reasonable for an officer to assume that a driver has authority over the contents of a vehicle when there are multiple items and several passengers in the vehicle.[13]

¶ 31 Finally, the location of the container in the vehicle can be significant. An officer's search of a passenger's belongings is often unreasonable when the belongings are located in or near the area in which the passenger was sitting.[14] In contrast, an officer's search of a passenger's belongings based upon the driver's consent is more reasonable when the passenger's belongings are located in the trunk of the car,[15] an area over which the driver typically exercises control.

¶ 32 After considering the totality of the circumstances presented here, we conclude

---

the driver's consent where the passenger heard the driver consent and observed the search but did not object); *Maristany,* 627 A.2d at 1070 (stating that the court might have concluded that the officer's reliance on the driver's consent was unreasonable if the passenger "had claimed ownership of the bag").

11. *See Jaras,* 86 F.3d at 390 (holding that a passenger's consent could not be implied based on the passenger's silence where the passenger was not present when the driver gave consent and the searching officer never asked the passenger for consent); *James,* 206 Ill.Dec. 190, 645 N.E.2d at 203 (suppressing evidence obtained pursuant to the search of a passenger's belongings where the passenger was unaware of the driver's consent to search the vehicle, did not know the officer's purpose for the search, and was unaware that she was being asked to exit the vehicle so that officers could search it); *Norris,* 732 N.E.2d at 190–91 (suppressing evidence obtained pursuant to the search of a back seat passenger's backpack and noting that the passenger was unaware of the driver's consent to search); *Friedel,* 714 N.E.2d at 1241 (stating categorically that "[c]onsent may not reasonably be implied from a passenger's silence or failure to object where the officer did not expressly or impliedly ask the passenger for consent to search").

12. *See United States·v. Hammons,* 152 F.3d 1025, 1027–28 (8th Cir.1998) (upholding the search of a passenger's garment bag located in the trunk of a car based only on the driver's consent where the officer did not see a tag identifying the passenger as the owner of the bag); *Maristany,* 627 A.2d at 1067, 1070 (holding that an officer's reliance on the driver's consent to search a passenger's gym bag located in the trunk was reasonable where "the bag did not have any identification tags" and "there was nothing to alert [the officer] that both, none, or only one of the bags belonged to [the driver]").

13. *See, e.g., James,* 206 Ill.Dec. 190, 645 N.E.2d at 203 (invaliding a search of a passenger's purse because "the purse could logically have belonged to any one of the three adult women in the car"); *Norris,* 732 N.E.2d at 187, 190 (invalidating the search of a passenger's backpack where there were three occupants in the vehicle, in part because "it would have been objectively reasonable for [the officer] to realize that the backpack might belong to one of· the passengers rather than [the driver]").

14. *See Munoz,* 590 F.3d at 920, 923 (holding that an officer's search of a backpack on the floorboard of the front passenger area was unreasonable because "there were two people in the car who each had been sitting in the passenger seat during the trip"); *James,* 206 Ill.Dec. 190, 645 N.E.2d at 203 (in suppressing evidence obtained during a search of a passenger's purse, the court found it significant that the passenger's purse was on the seat in which she was sitting); *Norris,* 732 N.E.2d at 190–91 ("The backpack was found in the back seat of the vehicle, not in the front seat, thereby tending to the conclusion that the backpack belonged to a passenger and not the driver."); *Friedel,* 714 N.E.2d at 1240 (in suppressing evidence obtained during a search of a passenger's purse, the court found it significant that the passenger's purse was on the floor in the back seat where the passenger was sitting); *Caniglia,* 510 N.W.2d at 374 (suppressing evidence obtained during the search of a passenger's make-up purse when the purse was found under the seat in which the passenger was sitting).

15. *See Hammons,* 152 F.3d at 1028 (upholding the search of a passenger's bag that was located in trunk); *Maristany,* 627 A.2d at 1070 (same). *But see Frank,* 650 N.W.2d at 215–16 (holding that it was unreasonable for an officer to search a passenger's suitcase that was located in the trunk based only upon the driver's consent to search the vehicle).

that the case must be remanded to the district court for further factual findings. Several of the factors outlined above can be applied to the district court's factual findings. And application of those factors may weigh in favor of the conclusion that it would have been unreasonable for Officer Westerman to assume that the driver's consent extended to Ms. Harding's backpacks. But the district court did not . make particularized factual findings regarding either Ms. Harding's conduct in connection with the search or the nature of the backpacks in the vehicle. We therefore conclude that it is appropriate to remand the case for an evaluation of these factors and for a determination whether Officer Westerman reasonably believed that the driver of the vehicle in question had authority to consent to a search of the backpacks.

¶ 33 In this case, similar to *James, Frank,* and *Norris,* there were four passengers and several bags in the vehicle. In such a situation, the probability that one or more of the bags belonged to one of the passengers is extremely high. Thus, as in *James, Frank,* and *Norris,* it likely would have been unreasonable for Officer Westerman to believe that all of the bags in the car belonged to the driver.

¶ 34 The State makes much of the fact that the backpacks did not contain labels identifying Ms. Harding as the owner. It is true that some courts have emphasized such evidence, *see, e.g., Hammons,* 152 F.3d 1025, 1027–28 (8th Cir.1998), and we agree that it is a fact that should be considered. But we also believe the value of such information is limited in gauging the reasonableness of an officer's actions because it is hardly commonplace for people to place labels on the exterior of their belongings.

¶ 35 The location of Ms. Harding's backpacks in the vehicle is also significant. Unlike *James* and *Norris,* Ms. Harding's backpacks were located directly behind the seat in which she was sitting, in the cargo compartment of the SUV rather than on or next to a passenger seat. However, in contrast to the trunk of a vehicle, which is typically controlled only by the driver, the cargo compartment of an SUV is an area to which the rear seat passengers typically have access and over which they may exercise some control. It is certainly reasonable to assume that a back seat passenger in an SUV would place her belongings in the cargo area directly behind the seat.

¶ 36 We also find it significant that the driver provided Officer Westerman with only general consent to "take a look in the vehicle." By doing so, the driver merely represented authority over the vehicle; she did not represent authority over the personal items in the vehicle that belonged to other occupants.

¶ 37 Taken together, the above factors weigh in favor of a finding that Officer Westerman could not have reasonably believed that the driver had authority to consent to a search of Ms. Harding's backpacks. But Ms. Harding's conduct in connection with the search is also a factor that bears upon the reasonableness of the search. Whether Ms. Harding's behavior could have been construed as suggesting that the driver had apparent authority to consent to a search of the backpacks is of critical import. We note that, on the record before us, there is little evidence suggesting Ms. Harding overheard the driver give consent to search the vehicle. For example, the record clearly establishes that Officer Westerman obtained the driver's consent only after the driver returned to the officer's patrol car. And it is undisputed that, at this point, Ms. Harding was in the other vehicle. But these facts do not completely foreclose the possibility that Ms. Harding was somehow made aware of the driver's consent before Officer Westerman began his search. If on remand the court finds that Ms. Harding was aware of the driver's consent but failed to object, that could suggest her acquiescence in the search and could weigh in favor of a determination that the officer reasonably believed that the driver had authority to consent.

¶ 38 Similarly, there is little indication that Ms. Harding ever became aware of the grounds for the search. Ms. Harding was asked to exit the car and wait with a back-up officer while Officer Westerman conducted the search. Officer Westerman did not mention specifically to the passengers that he was searching the vehicle based on the driv-

er's consent, and the State did not introduce any evidence that Ms. Harding was aware the search was being conducted pursuant to the driver's consent.

¶ 39 Additionally, the nature of the bags in the cargo compartment of the SUV is an important factor in the reasonableness analysis. As noted above, Officer Westerman found the incriminating evidence in a backpack directly behind Ms. Harding. Many backpacks, like purses or fanny packs, are very personal items and therefore are not generally objects for which two or more persons share common use and authority. However, some backpacks are more like large suitcases that could easily be shared by fellow travelers. Without more specific factual findings, we cannot conclude that Ms. Harding's backpack was the type of personal item generally excluding common usage and authority. The parties' failure to elicit specific testimony bearing upon Ms. Harding's conduct or the general nature of the backpacks can reasonably be attributed to the fact that this is a case of first impression; we have never before articulated the above multi-factor test. In such a circumstance, remand is appropriate so that the district court may enter particularized findings of fact bearing upon the following questions: (1) whether Ms. Harding's conduct can be construed as suggesting that the driver had apparent authority to consent to a search of the backpacks and (2) whether it was reasonable for Officer Westerman to assume the driver had authority to consent to a search of the backpacks based on their nature and characteristics.

¶ 40 If, after considering the additional factual findings, the district court concludes that, based on the totality of the circumstances, the facts available to Officer Westerman at the time of the search would not "warrant a man of reasonable caution in the belief that the [driver] had authority over" the items searched, *Rodriguez*, 497 U.S. at 188, 110 S.Ct. 2793 (internal quotation marks omitted), then the evidence obtained pursuant to the search must be suppressed.

## CONCLUSION

¶ 41 The evidence adduced in the district court supports the conclusion that Officer Westerman could not have reasonably believed that the driver had authority to consent to a search of Ms. Harding's backpacks. The probability that the backpacks did not belong to the driver was high because there were four occupants in the vehicle and the backpacks were located directly behind the seat in which Ms. Harding was seated. But the district court did not make any particularized findings as to whether Ms. Harding's conduct in relation to the search suggested the driver had apparent authority to consent to a search of her backpacks or as to the general nature of the backpacks searched by Officer Westerman. We therefore remand this case for further factual findings bearing on those issues.

¶ 42 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice NEHRING, and Justice LEE concur in Justice PARRISH's opinion.